## No. C-1715

## Edward Joseph Kreiser v. The People of the State of Colorado

(604 P.2d 27)

Decided December 17, 1979.

R. D. Jorgensen, for petitioner.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David Schwartz, Assistant Attorney General, Appellate Section, for respondent.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

Certiorari was granted to review the decision of the Colorado Court of Appeals in *People v. Kreiser,* 41 Colo. App. 210, 585 P.2d 301. We reverse.

Petitioner, Edward Kreiser, was charged with first-degree assault under section 18-3-202, C.R.S. 1973. The charge arose out of a beating which allegedly occurred on October 20, 1975. The facts are set forth in *People v. Kreiser, supra,* and need not be repeated here.

The jury was instructed on first-degree assault, and on the lesser included offenses of second-degree assault with intent to cause serious bodily injury (section 18-3-203(1)(a), C.R.S. 1973), on second-degree assault with a deadly weapon (section 18-3-203(1)(b), C.R.S. 1973), and on third-degree assault (section 18-3-204, C.R.S. 1973). The verdict form submitted to the jury was a multiple verdict form which gave the jury the option of finding the accused not guilty as to all counts, or guilty of any one of the four assault counts. That part of the verdict form which related to second-degree assault with intent to cause serious bodily injury omitted the critical word "serious," and recited only the words "bodily injury."

The verdict form had been prepared by defense counsel. The omission of the word "serious" had been overlooked by both defense counsel and the district attorney, as well as by the court.

The jury found the accused guilty of "second-degree assault with intent to cause bodily injury." The verdict was received by the court and ordered recorded, after which the court then gave the mandatory discharge instruction. The jury was discharged and thereupon separated.

Shortly thereafter, the district attorney discovered the defect in the verdict form. Nine of the jurors were found on the courthouse premises and returned to the jury room. The other three were located approximately one hour later at their homes, and returned to the courthouse.

In an effort to determine the intent of the jury, each juror was then interrogated by the court and each indicated his view that the accused was guilty of second-degree assault with intent to cause "serious bodily injury." The court then instructed the foreman to inscribe the word "serious" on the verdict form before the words "bodily injury," which he did. The jury was thereafter discharged.

Petitioner appealed to the court of appeals, which affirmed the conviction. He raises the same three arguments for reversal in this court as were considered by that court. In view of our disposition, we find it necessary to discuss only that error relating to the modification of the jury verdict and that error relating to the limitation of the petitioner's right to cross-examine the critical witness in the trial, the victim of the alleged assault.

I.

Petitioner argues that once a jury has been discharged, and the members of the jury have dispersed, the court cannot reconstitute the jury and poll the individual jurors to determine their intent in rendering a verdict, nor can the court direct the jury to alter or amend a verdict rendered. We agree.

The court of appeals did not decide this issue. It determined that the original verdict, under the circumstances of the case, was sufficient to convey beyond a reasonable doubt the meaning and intent of the jury, and that the recall and reconstitution of the jury was not, therefore, reversible error. We cannot agree with the conclusion of the court of appeals that the jury verdict as initially rendered was unambiguous. We therefore discuss the problems raised by the attempted reconstitution of the jury.

■ The general rule in criminal cases appears to be that after a verdict has been rendered and received by the court, and the court has discharged the jury, which thereupon disperses, leaving the courtroom and the control of the judge, the jury may not thereafter be recalled and reconstituted to again consider or amend its verdict.[1] In other words, when those events have occurred, the jury is *functus officio*. The leading case is *Summers v. United States,* 18 F.2d 582 (4th Cir. 1926), which sets forth

---

[1] This rule was inferentially recognized by this court in *Schoolfield v. Brunton,* 20 Colo. 139, 36 P. 1103 (1894). There, in a civil case, the jury rendered its verdict and was discharged by the court. *Before* the jury left the courtroom, the insufficiency of the verdict was noted. The judge revoked his order of discharge, and the jurors were immediately directed to reconvene for the purpose of reforming the verdict. The jury after further deliberation returned a new verdict which was again received by the court. In reviewing that procedure, this court found no error.

the rationale for the rule, which simply stated is that once the jurors have separated and departed from the courtroom and from the control of the judge, with the opportunity to mingle and discuss the case with others, whether discussion be had or not, the jury's functions are at an end. *Commonwealth v. Brown,* 367 Mass. 24, 323 N.E.2d 902 (1975); *People v. Rushin,* 37 Mich. App. 391, 194 N.W.2d 718 (1971); *State v. Fungone,* 134 N.J. Super. 531, 342 A.2d 236 (1975).

"To rule that a jury could be recalled after being discharged and leaving the courtroom would not only offend the policies underlying the double jeopardy clause, but would also serve as an invitation to tamper with the jury after it had completed its deliberations. . . ." *People v. Rushin, supra.*

*See generally* Annot., 66 A.L.R. 536 (1930).

In the instant case, as heretofore noted, the judge had discharged the jury which then left the courtroom and separated, going their individual ways. On recall, nine of the jurors were found in the courthouse parking lot. The other three jurors had left the courthouse premises and were located at their respective homes. It is thus clear that the jurors had the opportunity of mingling with the public and discussing the case.[2]

Since the recall and reconstitution of the jury could not legally aid the jury's verdict, we consider whether the verdict was unambiguous and certain.

The People contend, and the court of appeals agreed, that even if it was improper to recall and poll the jury petitioner was not prejudiced by the procedure since the verdict originally returned was certain and thus legally sufficient, citing *Yeager v. People,* 170 Colo. 405, 462 P.2d 487 (1969). This court held in *Yeager* that "a verdict is not subject to the charge of uncertainty *if it is phrased in words which convey beyond a reasonable doubt the meaning and intention of the jury.*" (Emphasis added.)

■ We do not find such certainty in the verdict originally returned by the jury in this case. The jury had been instructed that one of the elements of second-degree assault was "intent to cause *serious bodily injury,*" and that third-degree assault required "intentionally, knowingly, or recklessly causing *bodily injury* to another person." The verdict returned by the jury was "second-degree assault with intent to cause bodily injury." The verdict rendered by the jury was not responsive to the instructions. It is not clear from that language of the verdict that the jury concluded that petitioner in committing the assault had the intent to cause

---

[2] The record of the hearing on petitioner's motion for a new trial indicates that, prior to being polled by the court as to the jury verdict, the jurors had been advised by someone that there was a problem with the verdict. The record is silent as to whether the jurors discussed the case generally with any members of the public.

*serious bodily injury,* and thus was guilty of second-degree assault or, on the other hand, intended to cause only *bodily injury,* and thus was guilty of third-degree assault.

We have carefully examined the authorities relied on by the People in support of the contention that the verdict was not ambiguous. We have concluded, however, that the verdict in this case is too uncertain to be legally sufficient.

## II.

■ Petitioner also argues that it was reversible error for the trial court to restrict the scope of cross-examination of the principal witness in the trial. The victim of the assault, Nelson Burch, filed a civil action against petitioner. The trial court permitted the defense attorney on cross-examination to elicit that such a suit for monetary damages had been filed, but prohibited further questioning concerning the contents of the complaint and the amount of damages claimed. In his civil complaint, Burch alleged that petitioner used his hands and feet in the assault, and made no mention of the use of a blackjack. At the trial in the case before us, Burch testified that petitioner had used a blackjack in the assault. The court refused to allow defense counsel to question Burch regarding this apparent contradiction. This was error.

This evidence was relevant to the issues of first-degree assault "by means of a deadly weapon" and to second-degree assault to "cause bodily injury by means of a deadly weapon." It bore upon the credibility of the victim's testimony and upon his motive, interest and bias. *See People v. Simmons,* 182 Colo. 350, 513 P.2d 193 (1973); *People v. King,* 179 Colo. 94, 498 P.2d 1142 (1972); *Villaroman v. United States,* 87 U.S. App. D.C. 240, 184 F.2d 261 (1950); *Smith v. United States,* 389 A.2d 1364 (D.C. Ct. App. 1978); *State v. Doughty,* 399 A.2d 1319 (Me. 1979); *People v. Richmond,* 35 Mich. App. 115, 192 N.W.2d 372 (1971).

However, in our view, the error is harmless. The jury acquitted petitioner of the charges involving the use of a deadly weapon.

## III.

We do not consider petitioner's third contention of error relating to the alleged failure of the district attorney to comply with Crim. P. 7(c) to merit discussion and therefore affirm the court of appeals on that point.

## IV.

■ Rather than remand this case for a new trial, we believe it more appropriate in view of the substantial evidence supporting a verdict of assault in the third degree to direct that the conviction of second-degree assault be vacated and that a judgment of conviction of assault in the third degree be entered, and that petitioner be sentenced accordingly. *See People v. Morris, Jr.,* 190 Colo. 215, 545 P.2d 151 (1976); *People v. Patterson, Jr.,* 187 Colo. 431, 532 P.2d 342 (1975); *People v. Bowers,*

187 Colo. 233, 530 P.2d 1282 (1975); *State v. Fungone, supra.*

The judgment of conviction of second-degree assault is reversed and the case is returned to the court of appeals with directions that the cause be remanded to the district court for further proceedings consonant with the views herein expressed.