966 P.2d 1035 (1998)
David MONTANEZ, Petitioner,
v.
The PEOPLE of the State of Colorado, Respondent.
No. 97SC174.
Supreme Court of Colorado. En Banc.
June 29, 1998.
David F. Vela, Colorado State Public Defender, Claudia Brett Goldin, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.
Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Clemmie P. Engle, Senior Assistant Attorney General, Criminal Enforcement Section, Denver, Colorado, Attorneys for Respondent.
Chief Justice VOLLACK delivered the Opinion of the Court.
We granted certiorari to review the court of appeals decision in People v. Montanez, 944 P.2d 529 (Colo.App.1996), to determine *1036 whether a jury in a criminal case was properly recalled and allowed to amend its verdict after being formally discharged by the Jefferson County District Court (trial court). The court of appeals determined that the recall was proper. We reverse and remand with instructions.

I.
In August 1992, an armed man broke into a home, held the family at gunpoint, and robbed them. The police arrested David A. Montanez (Montanez), who was tried before a jury on charges of first degree burglary (two counts), crime of violence, and aggravated robbery. Initially, the jury found Montanez guilty on the charges of burglary and aggravated robbery but found him not guilty on the crime of violence charge. At the request of defense counsel, the trial court polled the jurors individually, all of whom affirmed the verdicts. The trial court dismissed the jury, and they left the courtroom.
A few minutes later, the bailiff informed the trial court that the jury had mistakenly filled out one of the verdict forms. Over defense counsel's objection, the trial court recalled the jury. At the time of recall, ten of the jurors were in the hall behind the courtroom in the custody of the bailiff. The eleventh juror was exiting the building near the metal detectors, and the twelfth was outside the courthouse on the way to the parking lot. When all the jurors had returned, the trial court again polled them as to their verdicts. Each of the jurors confirmed verdicts one, two, and four but rejected number three, the not guilty verdict on the crime of violence charge.[1] The trial court gave the jurors a new verdict form and sent them to the jury room for further deliberations. Upon returning, the jury rendered a guilty verdict on all four charges. When polled by the trial court, the jury unanimously affirmed the verdicts. The trial court entered a judgment of conviction against Montanez.
On appeal, the court of appeals affirmed the trial court's actions in recalling the jurors and allowing them to amend verdict number three. Citing Kreiser v. People, 199 Colo. 20, 604 P.2d 27 (1979), the court of appeals acknowledged the general rule that the jury cannot be recalled after it has been formally dismissed and the jurors have left the courtroom and the control of the judge. However, the court of appeals concluded that under the circumstances of this case, recall was proper because Montanez failed "to show that the jurors had actually communicated with others or were influenced to change their verdict by their contact with others." Montanez, 944 P.2d at 534. Moreover, the court of appeals determined that due to the irregularity of the crime of violence verdict form, the jury's amendment amounted to the correction of a clerical error. Accordingly, the court of appeals affirmed Montanez' conviction on all charges.

II.
In general, a jury may change or modify its verdict up to the point the verdict is accepted by the court and the jury is formally discharged. See State v. Badda, 68 Wash.2d 50, 411 P.2d 411, 417 (Wash.1966). However, after the jury has been discharged, it may be recalled to amend its verdict only in certain limited circumstances. See State v. Myers, 318 S.C. 549, 459 S.E.2d 304, 305 (S.C.1995). But see West v. State, 228 Ind. 431, 92 N.E.2d 852, 855 (Ind.1950) (stating that a verdict cannot be materially amended after the jury has been formally discharged). In Colorado, the recall of a discharged jury is governed by the following rule:
[A]fter a verdict has been rendered and received by the court, and the court has discharged the jury, which thereupon disperses, leaving the courtroom and the control of the judge, the jury may not thereafter be recalled and reconstituted to again consider or amend its verdict.... [O]nce the jurors have separated and departed *1037 from the courtroom and from the control of the judge, with the opportunity to mingle and discuss the case with others, whether discussion be had or not, the jury's functions are at an end.
Kreiser, 199 Colo. at 22-23, 604 P.2d at 29; accord People v. Lopez, 867 P.2d 52, 53 (Colo. App.1993). This rule helps to ensure that jury verdicts will not be tainted by any outside influence. See Kreiser, 199 Colo. at 23, 604 P.2d at 29. The rule also promotes the finality of verdicts, which, in criminal trials, is a fundamental principle guarded by the Double Jeopardy Clause. See id.; see also U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.").
In Kreiser, the jury received an instruction on the crime of second degree assault with intent to cause serious bodily injury. However, the instruction failed to include the key word "serious." The defendant was convicted under the instruction, and the court discharged the jury. When the error was discovered, the court recalled the jury, directed them to amend the verdict form, and entered a final judgment of conviction. We reversed, noting that at the time of recall, nine of the jurors had reached the courthouse parking lot and the other three had returned home. We held that the recall was improper because "the jurors had the opportunity of mingling with the public and discussing the case." Kreiser, 199 Colo. at 23, 604 P.2d at 29.
In this case, the jury left the courtroom and the control of the judge directly after being discharged. While most of the jurors remained in the custody of the bailiff, two jurors were well outside the control of the court at the time of recall. One juror was about to exit the courthouse, and the other was already outside. Because these two jurors had the opportunity to mingle and discuss the case with outsiders, it was improper for the trial court to recall the jury. Contrary to the court of appeals, the burden is not on Montanez to show that the two jurors communicated with others on their way out of the courthouse. As we stated in Kreiser, the jury's functions are over when they have had "the opportunity to mingle and discuss the case with others, whether discussion be had or not." Id. (emphasis added). Any rule to the contrary would invite doubt regarding the integrity of verdicts and raise legitimate concerns as to the reliability of the jury system. See Melton v. Commonwealth, 132 Va. 703, 111 S.E. 291, 294 (Va.1922) (refusing to consider the issue of whether the jury was actually influenced after leaving the control of the court because "[t]he sanctity of jury trials cannot be thus subjected to the hazard of suspicion").[2]

III.
We conclude that in these circumstances, the trial court erred in recalling the jury and allowing the verdict to be amended. Therefore, we reverse the court of appeals and remand with instructions that the trial court enter a judgment of conviction based on the jury's original verdict.
SCOTT, J., concurs.
KOURLIS, J., dissents.
Justice SCOTT concurring:
I join the majority in its opinion and its judgment. I write separately only to make clear that I do so not only in reliance upon our own precedent, cited by the majority, but also in reliance upon the reasoning of cases cited by the dissent. In my view, while Masters v. Florida, 344 So.2d 616, 620-21 (Fla.Dist.Ct.App.1977) (it is proper to reconvene jury where "nothing in the record [reflects] that the jury had in fact separated and gone their separate ways" and "though discharge was spoken by the court [the jury] in *1038 fact remained an undispensed unit, within the control of the court."), and State v. Myers, 318 S.C. 549, 459 S.E.2d 304, 305 (S.C.1995) (trial court had not erred when it permitted jury to correct the verdict because although "the jury was dismissed to the custody of the clerk who was to give them further instructions before their release" the jurors had not yet dispersed), reach the opposite result, their reasoning is not inconsistent with the majority opinion, requiring reversal in this case.
Justice KOURLIS dissenting:
I agree with the trial court and the court of appeals that the record in this case does not support an inference of any opportunity for inappropriate contact or communication with the discharged jurors. Therefore, I respectfully dissent.

I.
Our first concern must be to promote and preserve the integrity of verdicts and the reliability of our jury system. In criminal trials, we must additionally be mindful of double jeopardy proscriptions. See U.S. Const. amend. V. We have recognized and honored these concerns in our case law to date. See Kreiser v. People, 199 Colo. 20, 604 P.2d 27 (1979). What we have not done is adopt a bright line rule that designates a specific point in time or a specific place beyond which jurors may never be recalled. Rather, we have recognized that common sense and reasonableness must play a role.
In Kreiser, we articulated a standard that measures the reasonableness of the request to recall the jurors within the framework of the applicable circumstances. Kreiser directs that the inquiry should be whether the jurors have had "the opportunity to mingle and discuss the case with others." Kreiser, 199 Colo. at 23, 604 P.2d at 29. In that case, where three jurors had reached their homes, and the jury was not recalled for one hour, it was clear the jurors had the opportunity of mingling with the public and discussing the case, and the court so found. See id. at 21, 604 P.2d at 28.

II.
The facts here are quite different. Ten of the jurors never left the custody of the bailiff, one was at the door of the courthouse and another just outside when they were recalled. The jurors were out of the presence of the court for only a few minutes.
Also, the facts surrounding the impetus for recall are significant. In Kreiser, the district attorney found the error and asked to reconvene the jury, while here, the jurors themselves requested an opportunity to correct their verdict. See id. In Kreiser, three of the jurors actually went home and were not reassembled until one hour had elapsed. In the instant case, only a short amount of time passed between dismissal and recall, and only a limited space separated the discharged jurors from the courtroom. Although there is no finding as to the precise time lapse, the record reflects that only a few minutes could have passed between the time of dismissal and reassembly. No other court business intervened.
Lastly, in Kreiser, the defect in the verdict was created by the court and counsel who were neglectful in omitting an important word on the jury form. See id. Here, the mistake stemmed from the inherent confusion created by the verdict form for verdict number three, when compared to the other forms. The guilty verdict language and signature block on the verdict form in question were presented in opposite order from the other three forms. See People v. Montanez, 944 P.2d 529, 534 (Colo.App.1996).
In this case, the jurors themselves prompted the court to reconvene the jury after dismissal. The trial court judge immediately asked the bailiff to reassemble the jurors, then reconvened the jury, read the verdicts, and polled each juror regarding the verdict. All twelve responded that verdict number three was incorrect. The jury then met for several minutes, during which time it destroyed the original verdict number three form and completed another form consistent with their finding of the use of violence.
All of these facts diverge from Kreiser and also buttress the conclusion that the jury was not coerced or influenced to change their *1039 verdict; rather, they made a clerical mistake that they wished to correct.
In my view, the circumstances of this case support a conclusion that it was reasonable to permit the jury to reconvene.

III.
Our rule and the application I would urge in this case find support in other jurisdictions. The Kreiser rule itself was built upon Summers v. United States, 11 F.2d 583 (4th Cir.1926). See Kreiser, 199 Colo. at 22-23, 604 P.2d at 29. The Summers court reasoned that a jury:
may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has been impaneled is still under discussion by the court, without intervention of any other business.
Summers, 11 F.2d at 586.
Hence, an essentially undispersed jury unit may be reassembled to reconstitute their original, intended verdict. See, e.g., Masters v. State, 344 So.2d 616, 619 (Fla. Dist.Ct.App.1977) (holding that when nothing in the record indicates that the jury had any opportunity to communicate with any person during the very few minutes that transpired between the time of discharge and recall, it is proper to reconvene); State v. Myers, 318 S.C. 549, 459 S.E.2d 304, 305 (S.C.1995) (holding that when a jury remained essentially undispersed, was subjected to no outside influence during the two minute interval between discharge and reassembly, and was given no additional findings, reassembly was proper to reflect the actual verdict reached). The concept of an "essentially undispersed unit," as outlined in other jurisdictions, is characterized as a jury which has not left control of the court when only a few minutes has elapsed between discharge and reassembly and no evidence of outside influence is shown. In the case before us, there is an adequate showing that only a short time elapsed, that the judge retained sufficient control to reassemble the jury quickly, and that there was no evidence of outside influence.

IV.
Lastly, I suggest that the question of whether it was reasonable to reconvene the jury is best left to the discretion of the trial judge. The trial judge is clearly best positioned to determine the factual realities surrounding the request for reassembly. Trial courts necessarily have wide discretion in situations where factual determinations, credibility, demeanor, and physical layout are at the crux of the issue. See, e.g., People v. Hauseman, 900 P.2d 74, 80 (Colo.1995) (stating trial courts are in the best position to determine credibility of witnesses and to weigh conflicting evidence in making findings of historical facts); People v. Thomas, 853 P.2d 1147, 1149 (Colo.1993) (stating that deference is given to trial court's findings of fact and, as long as there is support for them, the Supreme Court will not overturn those findings even though a contrary position may find support in the record); People v. Russo, 713 P.2d 356, 362 (Colo.1986) (stating that wide latitude of trial court discretion is appropriate regarding competence of jurors); People v. Hughes, 946 P.2d 509, 519 (Colo. App.1997) (holding that appellate court must defer to trial court's assessment of courtroom occurrences).
The trial judge knows the layout of the courthouse, how long it might take to get to the parking lot, and whether the jurors would come into contact with a member of the public on the way to the parking lot. The trial judge knows whether there were other people watching the trial and whether they left the courtroom when the jury did. The trial judge measures the time, the physical circumstances and the people involved and reaches a conclusion about whether there may have been an opportunity for taint of a discharged jury. Not all of those considerations need be placed on the record.
Where, as here, the facts indicate that the jury was indeed merely correcting an error, and the record reflects no opportunity for jury taint, I would not disturb the trial *1040 court's determination that it was appropriate and reasonable to reconstitute the jury.

V.
Ultimately, twelve jurors in a criminal trial are called upon to determine whether they believe, beyond a reasonable doubt, that the prosecution has proven its case against the defendant. Those jurors must deliberate and reach a verdict free of influence from anyone else. Their verdict, whatever it may be, represents the best that our system can offer and deserves to be protected. However, jurors, judges, attorneys and litigants are human, and human error necessarily creeps into jury trials as into all other human endeavors. Our system must have the ability to adjust for the exigencies of a particular trial, a particular courthouse or time-constraint. Wooden rules serve no one. The person charged with gauging when flexibility serves fairness and when it does not is the trial judge. Specifically, our precedent in Kreiser calls for a standard of reasonableness to be employed in determining whether a jury may or may not be reconvened in certain circumstances. The record in this case fully supports a conclusion, consistent with that of the trial judge, that it was reasonable to recall this jury and permit them to correct their verdict form. Accordingly, I would affirm the court of appeals and respectfully dissent.
NOTES
[1] The verdict forms for burglary and armed robbery directed the jury to sign at the top for "not guilty" and at the bottom for "guilty." However, the crime of violence form, which was a special interrogatory, contained a signature space at the top to "find" Montanez used a deadly weapon and a space at the bottom to "not find" he used such a weapon. The jury signed all the verdict forms at the bottom, thereby acquitting Montanez of the crime of violence charge.
[2] We also disagree with the court of appeals' conclusion that the jury's amendment of verdict number three can be characterized as "clerical." See Montanez, 944 P.2d at 534. In certain circumstances, a discharged jury may be recalled to correct a verdict that is insufficient in form. See Schoolfield v. Brunton, 20 Colo. 139, 142, 36 P. 1103, 1104 (1894). However, as we noted in Schoolfield, the corrected verdict must be "the same, in substance, as the former verdict." Id. In this case, the jury initially acquitted Montanez of the crime of violence charge. After being recalled, the jury convicted Montanez. Clearly, the second verdict was not the same in substance as the first. Accordingly, Schoolfield provides no grounds for affirming the jury's amended verdict.