The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 13, 2020

## 2020COA25

## No. 17CA1558, *People v. Brooks* — Criminal Law — Verdicts or Findings — Special Interrogatories — Inconsistent Verdicts

The division applies for the first time a distinction suggested

by the Colorado Supreme Court in *People v. Rail*, 2019 CO 99, and

concludes that there is a difference in the analysis, and the

potential remedy, between a claim that a single verdict is internally

inconsistent or ambiguous and a claim that two distinct verdicts

are legally inconsistent.

Court of Appeals No. 17CA1558
El Paso County District Court No. 14CR587
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Plaintiff-Appellant and Cross-Appellee,

v.

Lorenzo Fondzel Brooks,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Bernard, C.J., and Terry, J., concur

Announced February 13, 2020

Daniel H. May, District Attorney, Tanya A. Karimi, Deputy District Attorney, Colorado Springs, Colorado; Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Patrick R. Henson, Alternate Defense Counsel, Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1     The People appeal the trial court's order granting the defendant, Lorenzo Fondzel Brooks, a judgment of acquittal for first degree burglary.  Brooks cross-appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance, third degree assault, first degree trespassing, and two counts of menacing.  In resolving this case, we apply for the first time a distinction suggested by the Colorado Supreme Court in *Rail v. People*, 2019 CO 99: that there is a difference in the analysis of a claim that a single verdict is internally inconsistent and a claim that two distinct verdicts are legally inconsistent. Further, we consider the proper remedy for a verdict ambiguity created by an inconsistent response to a special interrogatory. Having done so, we conclude, albeit for slightly different reasons, that the trial court correctly determined that the burglary verdict was inconsistent with the interrogatory response, but the menacing verdicts were not inconsistent.  However, we further conclude that the trial court imposed the wrong remedy related to the burglary verdict.  Thus, we affirm in part and reverse in part.

## I.    Background

¶ 2    According to the evidence presented at trial, M.U. heard a loud noise one night that sounded like someone was coming in her front door.  She testified that she went into the living room and saw Brooks trying to enter while holding a gun.  She used the couch to try and stop him from entering, at which time he dropped the gun.  She struck Brooks, then fell and struggled with him for the gun.  During the struggle, M.U.'s boyfriend, Q.L., woke up and also began to struggle with Brooks.  The gun discharged at some point during the struggle.  Brooks also bit M.U.'s finger.

¶ 3    The struggle continued until the police arrived.  An officer used a Taser on Brooks, who was on the floor and refused to get up.  Another officer then found a gun underneath Brooks.  After transporting Brooks in his police vehicle, an officer found a bag of cocaine on the backseat.

¶ 4    Brooks was charged with first degree burglary, unlawful possession of a controlled substance, two counts of menacing, third degree assault, and first degree criminal trespass.[1]

¶ 5    As relevant here, the jury instruction provided to the jury on the first degree burglary charge listed the following elements:

> (1) That the defendant,
> (2) in the State of Colorado at or about the date and place charged
> (3) knowingly,
> (4) entered unlawfully, or remained unlawfully after a lawful or unlawful entry,
> (5) in a building or occupied structure
> (6) with intent
> (7) to commit therein the crime of Menacing and
> (8) in effecting entry or while in the building or occupied structure or in immediate flight from the building or occupied structure
> (9) the defendant or another participant in the crime used a deadly weapon or possessed and threatened the use of a deadly weapon, namely a firearm.

---

[1] Brooks was also charged with possession of a weapon by a previous offender (POWPO). The trial on this count was bifurcated from the other charges. After receiving the jury's verdicts on the other charges, including the finding that Brooks did not possess a weapon during the burglary, the prosecution dismissed the POWPO count.

¶ 6     The prosecution had charged first degree burglary as a crime

of violence under section 18-1.3-406, C.R.S. 2019.  Accordingly, the

jury was also given a special interrogatory related to that charge:

> Did the defendant use, or possess and
> threaten the use of, a deadly weapon?
>        . . . .
> The defendant used, or possessed and
> threatened the use of, a deadly weapon only if:
> (1)    the defendant used, or possessed and
>        threatened the use of, a deadly weapon,
> (2)    during the commission of, attempted
>        commission of, conspiracy to commit
>        First Degree Burglary, or in the
>        immediate flight therefrom.

¶ 7     The jury instruction for the menacing charges listed the

following elements:

> (1)    That the defendant
> (2)    in the State of Colorado, at or about the
>        date and place charged,
> (3)    knowingly,
> (4)    by any threat or physical action,
> (5)    placed or attempted to place another
>        person in fear of imminent serious bodily
>        injury,
> (6)    by use of a deadly weapon or any article
>        used or fashioned in a manner to cause a
>        person to reasonably believe that the
>        article was a deadly weapon,
> (7)    and was not acting in self-defense[.]

¶ 8     The jury found Brooks guilty of each of the charges.  However,

in the first degree burglary special interrogatory, the jury found that

Brooks did not use, or threaten the use of, a deadly weapon during the burglary.

¶ 9    Brooks moved for a judgment of acquittal on the burglary and menacing convictions, asserting they were inconsistent. The court found that the two verdicts were not inconsistent but acknowledged that "the jury's answers to interrogatories indicate the jury did not find the prosecution proved that Mr. Brooks used or possessed a firearm." The court further observed that "in answering 'no' to the interrogatory question whether the defendant used, or possessed a deadly weapon in the commission of first degree burglary, the jury negated element #9 of the first degree burglary instruction." Then the court entered a judgment of acquittal on the first degree burglary count and sentenced Brooks to three years in the custody of the Department of Corrections on the remaining charges.

¶ 10   The People appeal and Brooks cross-appeals, separately contesting the trial court's conclusions regarding the consistency of the jury verdicts. Specifically, the People argue that the trial court erred by concluding that the jury verdict for first degree burglary was inconsistent with the special interrogatory. Brooks contends that the trial court erred by concluding that the jury verdicts for two

counts of menacing were consistent with the special interrogatory for burglary. We address, and reject, each contention in turn. The People also contend that the trial court imposed the wrong remedy for the inconsistency. On this point, we agree with the People.

## II. Inconsistent Jury Verdicts: Legal Principles and Standard of Review

### A. Applicable Law

¶ 11 "A verdict in a criminal case should be certain and devoid of ambiguity." *Yeager v. People*, 170 Colo. 405, 410, 462 P.2d 487, 489 (1969). The verdict must "convey beyond a reasonable doubt the meaning and intention of the jury." *People v. Durre*, 690 P.2d 165, 173 (Colo. 1984) (quoting *Yeager*, 170 Colo. at 410, 462 P.2d at 489).

¶ 12 But consistency in verdicts is not a necessity. *People v. Frye*, 898 P.2d 559, 571 (Colo. 1995). Inconsistent guilty and not guilty verdicts based on the same conduct, for example, may be the result of lenity toward the defendant by the jury, and thus do not warrant reversal. *United States v. Powell*, 469 U.S. 57, 66 (1984).

¶ 13 However, the Colorado Supreme Court has recognized that in some circumstances a verdict inconsistency may result in an infirm

6

conviction. For example, a defendant cannot be simultaneously acquitted of a substantive offense and convicted of conspiracy to commit that same offense where the evidence of the substantive offense is the same as the evidence of the conspiracy. *People v. Robles*, 160 Colo. 297, 301, 417 P.2d 232, 234 (1966).

¶ 14 Nor can a defendant be convicted of two distinct offenses "when essential elements of [the] two guilty verdicts logically negate each other." *People v. Delgado*, 2019 CO 82, ¶ 12. In *Delgado*, the defendant was convicted of both robbery and theft from person. *Id.* at ¶ 2. The first conviction requires proof that the defendant unlawfully took an item with force; the second conviction requires proof that the defendant unlawfully took an item without force. *Id.* Because the prosecution could not have proven beyond a reasonable doubt that the defendant acted both with force and without it, both convictions could not stand. *Id.* at ¶ 46.

¶ 15 Recently, our supreme court addressed the possibility of a third scenario in which an inconsistent verdict problem may arise: where the jury's answer to a special interrogatory negates an element of the substantive offense to which the special interrogatory relates. *Rail*, 2019 CO 99. In *Rail*, the defendant was charged with

7

sexual assault on a child as a pattern of abuse and sexual assault on a child by one in a position of trust. *Id.* at ¶ 3. The jury convicted the defendant of sexual assault on a child. *Id.* at ¶ 11. In addition, the jury indicated in a special interrogatory for the pattern of abuse allegation that the prosecution had proven all of the incidents described by the victim. *Id.* However, in a separate unanimity special interrogatory that by its terms applied to both the sexual assault on a child and the position of trust charges, the jury indicated that the same incidents listed on the pattern interrogatory were "[n]ot [p]roved." *Id.*

¶ 16    Significantly, the court began its analysis by distinguishing the scenario before it from cases in which two guilty verdicts were mutually exclusive. *Id.* at ¶¶ 25-26. The court noted that the issue before it was instead whether the jury's unanimity interrogatory responses nullified its verdict finding the defendant guilty of sexual assault on a child as a pattern of abuse. *Id.* at ¶ 27. Ultimately, however, the court did not resolve whether an inconsistent interrogatory answer can create an ambiguity in a verdict such that the verdict cannot stand.

¶ 17    Because the issue had not been preserved, the court reviewed

for plain error. *Id.* at ¶¶ 45-46. The supreme court assumed that

the trial court's entry of the judgment of conviction was both

erroneous and obviously so but noted that any error was mitigated

by the fact that the jury was polled and each juror reaffirmed his or

her guilty verdict. *Id.* at ¶ 46. As a result, the court declined to

reverse the conviction. *Id.*

¶ 18    Nevertheless, our supreme court's pointed distinction between

the scenario before it and a case involving two conflicting guilty

verdicts strongly suggests that the two claims are to be analyzed

differently.

## B.    Standard of Review

¶ 19    "Whether verdicts are mutually exclusive is a question of law.

Therefore, we review this issue de novo." *Delgado*, ¶ 13. Though

the supreme court in *Rail* did not address the standard of review,

we note that the determination of whether a special interrogatory

response conflicts with the general verdict form to which it is

attached involves considerations similar to those presented by

mutually exclusive verdicts. In *Kreiser v. People*, 199 Colo. 20, 604

P.2d 27 (1979), the supreme court considered a challenge that a

verdict was ambiguous because its title did not accurately describe the crime. Specifically, the verdict identified the crime of second degree assault as "with intent to cause bodily injury" rather than "with intent to cause serious bodily injury." *Id.* at 21, 604 P.2d at 28. Though the supreme court did not specifically identify the standard of review, it appears to have reviewed the issue de novo. *See id.* at 24, 604 P.2d at 30 ("We have carefully examined the authorities relied on by the People in support of the contention that the verdict was not ambiguous. We have concluded, however, that the verdict in this case is too uncertain to be legally sufficient.").

¶ 20    We note that no court has explicitly identified the standard by which we are to review this issue. However, because on the circumstances before us the standard of review would make no difference in the outcome, we assume without deciding that whether a verdict is internally inconsistent and thus ambiguous is also a question of law that we review de novo.

### III.    Brooks's Inconsistent Verdict Claims

¶ 21    Unlike the defendant in *Rail*, Brooks challenged the verdicts as inconsistent in the trial court. And his challenge was partially successful, in that the trial court concluded that the ambiguous

first degree burglary verdict could not stand.  Thus, resolution of the People's appeal requires us to address the issues that our supreme court left unresolved in *Rail*: how is a claim of an internally inconsistent, and thus arguably ambiguous, verdict analyzed and, if the verdict is found to be inconsistent, what is the remedy?  Resolution of Brooks's claim, on the other hand, requires us to determine whether the burglary and menacing verdicts are mutually exclusive.

### A.    The First Degree Burglary Verdict

#### 1.    The Jury's Verdict Was Ambiguous

¶ 22    The jury was instructed that to convict Brooks of first degree burglary it had to find that he used, or possessed and threatened to use, a deadly weapon, namely a firearm, during the burglary.  By marking the verdict form guilty, the jury indicated it had done so.  But on the special interrogatory form affiliated with that verdict, the jury explicitly found that he did not use, or possess and threaten to use, a deadly weapon during the burglary.

¶ 23    The People argue that, read together, the verdict and the interrogatory response merely mean that the jury rejected the prosecution's theory of the case that the deadly weapon used was a

firearm. But, the People assert, the jury could have concluded that Brooks used a different deadly weapon, such as a body part. True, the jury asked during deliberations whether "hands, feet, physical presence[, or] size" could be a deadly weapon. But the People's argument ignores the specific language of the elemental instruction given to the jury — that the jury must find that Brooks "used a deadly weapon or possessed and threatened the use of a deadly weapon, *namely a firearm.*" (Emphasis added.)

¶ 24 We cannot reconcile the jury's finding on the guilty verdict that Brooks committed the burglary with "a deadly weapon, namely a firearm," with the special interrogatory response that Brooks did not commit the burglary with a deadly weapon. In other words, we cannot say that the verdict expresses the jury's meaning and intent beyond a reasonable doubt. *Durre*, 690 P.2d at 173.

¶ 25 By negating an element of first degree burglary, the special interrogatory response rendered the verdict on that charge ambiguous. The verdict is therefore infirm and cannot stand. *Yeager*, 170 Colo. at 410, 462 P.2d at 489.

## 2. Acquittal Was the Wrong Remedy

¶ 26    The People contend that, even if the verdict cannot stand, the proper remedy was not acquittal, but entry of a conviction for second degree burglary.  We agree.

¶ 27    First, the court erred by entering a judgment of acquittal. Even though the special interrogatory response negated the ninth element of the first degree burglary offense, the jury did not acquit Brooks; it found him guilty.  Thus, acquittal was not appropriate. *See Delgado*, ¶ 43 (holding acquittal on both charges is not the proper remedy for inconsistent verdicts because the jury did not actually acquit the defendant).

¶ 28    As *Delgado* makes clear, if this issue were analyzed in the same way as a claim of mutually exclusive verdicts, the proper remedy would be retrial.  *Id.* at ¶ 45.  But this is because in entering the mutually exclusive verdicts, the jury essentially says that the defendant did not commit crime one because he committed crime two, and also that the defendant did not commit crime two because he committed crime one.  In other words, "it's impossible to know what exactly the jury intended."  *Id.* at ¶ 42.  As the court

13

noted in *Delgado*, "[t]he only finding that we can be sure of is that Delgado unlawfully took items." *Id.*

¶ 29 Deciding on the remedy is where the distinction between a single internally inconsistent verdict and two mutually exclusive guilty verdicts is most significant. Unlike mutually exclusive verdicts, when an inconsistency within a single verdict negates an element, the remaining elements may nevertheless support a guilty verdict. This distinction enables us to discern to a far greater degree what the jury found.

¶ 30 As noted, the response to the special interrogatory negated the ninth element of the burglary offense. However, there is no inconsistency between the interrogatory and any other jury finding. Thus, the jury unanimously, unambiguously, and beyond a reasonable doubt, found the following: (1) that Brooks (2) in the State of Colorado at or about the date and place charged (3) knowingly (4) entered unlawfully, or remained unlawfully after a lawful or unlawful entry, (5) in a building or occupied structure (6)

with intent (7) to commit therein the crime of menacing.[2]  These seven elements establish the crime of second degree burglary, a class 4 felony.  § 18-4-203, C.R.S. 2019.  The jury also found that Brooks had committed menacing.[3]

¶ 31     Rather than acquittal or retrial, the proper remedy for an ambiguous verdict in this circumstance is to enter a conviction to the lesser offense encompassed by the unchallenged jury findings.  The supreme court has done just that in a different ambiguous verdict scenario.  In *Kreiser*, upon concluding that the verdict for second degree assault was ambiguous, the supreme court remanded the case with instructions to enter a judgment of conviction for third degree assault.  199 Colo. at 24, 604 P.2d at 30.

¶ 32     Nor does entry of a conviction for the lesser burglary offense raise due process concerns.  In *Lucero v. People*, 2012 CO 7, after

_____

[2] The trial court concluded that the interrogatory response necessarily contradicted, and thus negated, proof that Brooks intended to commit felony menacing at the time of his trespass. *See Cooper v. People*, 973 P.2d 1234, 1239 (Colo. 1999), *disapproved of on other grounds*, *Griego v. People*, 19 P.3d 1 (Colo. 2007).  Whether Brooks actually possessed a firearm at the time of entry has no bearing on what his intent was upon entering the home.
[3] We address, and reject, Brooks's challenge to the menacing convictions below.

15

vacating a first degree burglary conviction due to insufficient proof of a deadly weapon, the supreme court remanded for entry of conviction and sentencing on the lesser included offense of second degree burglary, despite the fact that the jury was apparently not instructed on the lesser offense. *Id.* at ¶ 29. The court explained that "[e]ven if the jury is not instructed as to a lesser included offense, the defendant is on notice of the charge and has his chance to defend against it." *Id.*

¶ 33    Nor is Brooks's protection against double jeopardy implicated.

> [A]n appellate court, upon reversing a trial court's order granting a judgment of acquittal notwithstanding a jury verdict of guilty, may remand the case to the trial court with directions to reinstate the jury verdict without violating the constitutional prohibition against twice placing the defendant in jeopardy for the same offense.

*People v. Brassfield*, 652 P.2d 588, 593-94 (Colo. 1982) (citing *People v. Rivas*, 197 Colo. 131, 591 P.2d 83 (1979)). "[T]he entry of a judgment of conviction upon a jury verdict already returned does not require the successive trial that the Double Jeopardy Clause was designed to prevent." *Id.* at 594. Here, given that Brooks's motion was the functional equivalent of a motion for judgment

notwithstanding the verdict, entry of a conviction on the lesser offense than the one reflected in the guilty verdict is appropriate.

### B.     The Menacing Verdicts

¶ 34     Brooks contends that the special interrogatory response also negates an element of his menacing convictions.  But Brooks misapprehends the nature of mutually exclusive verdicts.

¶ 35     As a threshold issue, we note that the verdicts are not irreconcilable.  The special interrogatory merely means that the jury was not convinced beyond a reasonable doubt that Brooks used a deadly weapon "during the commission of the burglary."  A burglary occurs when an individual commits a trespass to a building and, at that same time, the person has the intent to commit a crime inside. *Cooper v. People*, 973 P.2d 1234, 1239 (Colo. 1999), *disapproved of on other grounds*, *Griego v. People*, 19 P.3d 1 (Colo. 2007).  Based on the evidence at trial, the jury could well have determined that, though Brooks did not have a weapon when he entered the home, once inside he obtained the weapon from somewhere inside the home and then threatened the victim with it.

¶ 36     In any event, as the court noted in *Delgado*, to be mutually exclusive, two guilty verdicts must necessarily conflict in such a

way that an essential element of one crime necessarily negates proof of an essential element of the other crime. *Delgado*, ¶¶ 2-3. But the response to the special interrogatory regarding the burglary did not negate any element of the offense of menacing, nor vice versa. There is no irreconcilable conflict in the two crimes such that proof of all of the elements of first degree burglary necessarily means a failure to prove all of the elements of menacing.

¶ 37 Rather than pointing to two mutually exclusive *guilty* verdicts, Brooks is actually attacking a perceived conflict between a *not guilty* verdict on the crime of violence and the guilty verdict on the felony menacing charges. But, again, a guilty verdict and a not guilty verdict need not be consistent. *Frye*, 898 P.2d 559. *Frye* illustrates why Brooks's claim fails.

¶ 38 In *Frye*, the defendant was accused of sexually assaulting the victim at gunpoint. *Id.* at 560-61. He was charged with, among other things, first degree sexual assault and menacing with a deadly weapon. *Id.* The jury was also instructed on the lesser offense of second degree sexual assault. *Id.* at 564. The difference between the two types of sexual assault was that the original charge included as an element that the submission of the victim was

18

caused through the application of physical force or physical violence, or by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, while the lesser offense did not include this element. *Id.* at 563-64. The menacing charge also required proof that the defendant placed or attempted to place another person in fear of imminent serious bodily injury. *Id.* at 563.

¶ 39 The jury convicted the defendant of the lesser offense and also convicted him of menacing with a deadly weapon. *Id.* at 564. As the court in *Delgado* noted, the conviction for second degree sexual assault "implied that [the defendant] was *not* guilty of first degree sexual assault." *Delgado*, ¶ 15. Nevertheless, though acknowledging that the verdicts were factually in conflict, the court let both convictions stand. *Frye*, 898 P.2d at 570-71.

¶ 40 Here, once the ambiguity in the burglary verdict is resolved, the conviction for second degree burglary is essentially an implied finding of not guilty on the first degree burglary charge. But just as in *Frye*, any inconsistency there may be between the two convictions is not fatal because such consistency is not required.

## IV. Conclusion

¶ 41     The judgment of conviction entered on the menacing counts is affirmed.  The judgment of acquittal on the first degree burglary count is reversed and the matter is remanded with instructions to enter a judgment of conviction for second degree burglary, a class 4 felony, and for sentencing on that count.

CHIEF JUDGE BERNARD and JUDGE TERRY concur.