David **STEWART,** Jr. (minor, by and through his next friend and mother, Chiquita Stewart), **Plaintiff–Appellee and Cross–Appellant,**

v.

**Velma I. RICE, Defendant–Appellant and Cross–Appellee.**

No. 98CA1357.

Colorado Court of Appeals,
Div. IV.

Aug. 31, 2000.

Rehearing Denied Nov. 16, 2000.

Certiorari Granted July 2, 2001.

Lloyd C. Kordick & Associates, Roger D. Johnson, Lloyd C. Kordick, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Patterson & Nuss, P.C., Franklin D. Patterson, Jennifer A. Poynter, Englewood, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge ROY.

In this negligence action, defendant, Velma Rice, appeals the jury's award of economic, noneconomic, and physical impairment damages. Plaintiff, David Stewart, Jr., a minor by and through his next friend and mother, Chiquita Stewart, cross-appeals the trial court's reduction of noneconomic damages to $250,000 pursuant to § 13–21–102.5, C.R.S. 1999. We affirm in part and remand for further proceedings on the issue of physical impairment damages.

Plaintiff was injured when a motor vehicle in which he was a passenger was involved in a controlled intersection collision with a motor vehicle driven by defendant after defendant proceeded through a stop sign. Plaintiff, nine years old at the time of the accident and fourteen at the time of trial, incurred head injuries which cause him to suffer frequently recurring severe headaches.

The trial court directed a verdict for the plaintiff on liability and only the issue of damages was submitted to the jury. Plaintiff presented evidence that his injuries, and headaches resulting therefrom, are permanent, that his life expectancy was sixty-two years, and that his lifetime medical expenses will approximate $20,000. Plaintiff did not present any evidence of his loss of ability to earn future wages. He did, however, introduce evidence that his headaches occurred often and incapacitated him for extended periods.

The jury returned a plaintiff's verdict awarding noneconomic damages of $696,000, economic damages of $440,000, and damages for physical impairment of $1,136,000. Pursuant to § 13–21–102.5, the trial court reduced the noneconomic damage award to $250,000. As a result, plaintiff was awarded a total judgment of $2,925,640, including prejudgment interest.

After the trial, defendant filed a timely motion for relief pursuant to C.R.C.P. 59. Plaintiff also filed a motion asking that the court reconsider the reduction in noneconomic damages and challenging the constitutionality of § 13–21–102.5.

Before the post-trial motions were ruled upon, plaintiff filed a motion for recusal of the trial judge, which was granted. The post-trial motions were denied pursuant to C.R.C.P. 59(j), as the trial court took no action with respect to them.

## I.

■ Defendant first argues that the jury award for economic loss in the amount of $440,000 was not supported by the evidence and, therefore, was speculative and excessive. We disagree.

The evidence presented showed that the plaintiff suffers from frequent, severe, and incapacitating migraine, or migraine-type, headaches. These headaches occur about three times a week and require the plaintiff to discontinue any activity and lie down in a dark room for an extended period of time. There is evidence that, by the time of trial, plaintiff had suffered 388 of these attacks since the accident and that he will continue to experience them for the remainder of his life. The jury could reasonably have concluded that this injury will have a profound impact on the plaintiff's education, his choice of vocations, his employability, and his future earnings.

The plaintiff did not offer any testimony, expert or otherwise, or other evidence, as to the amount, present value, or measure of any post-majority economic damages, or lost wages. In closing argument, plaintiff's counsel argued, using calculations based on the minimum wage, that plaintiff's postmajority economic damages were in excess of $160,000.

The jury was instructed, in pertinent part, without objection, as follows:

> If you find in favor of the plaintiff, ... you shall award as his actual damages ... an amount which will reasonably compensate the plaintiff for his injuries, damages and losses, if any.
>
> ....
>
> In determining such damages, you shall consider the following:
>
> 1. any physical pain, mental suffering, or both, the plaintiff has incurred to the present time, and any physical pain, mental suffering, or both he will incur in the future;
>
> 2. any reasonable and necessary expenses the plaintiff will incur in the future after he reaches the age of 18 or is emancipated for medical care or prescriptions;
>
> 3. any impairment of his earning capacity the plaintiff will incur in the future after he reaches the age of 18 or is emancipated;

. . . .

The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages. The question of whether or not damages are to be awarded is a question for the jury's consideration.

. . . .

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding the amount. You should use your best judgment based on the evidence.

In *Colorado Utilities Corp. v. Casady,* 89 Colo. 156, 300 P. 601 (1931), a nine-year-old child was severely injured when he came close to a downed high voltage line while standing on wet ground. The child lost his right arm and suffered other permanent injury. In that case, the supreme court approved, as a correct statement of the law, a damages instruction which stated, in pertinent part, as follows:

Where a minor has suffered a permanent injury, and such minor is too young to have selected an avocation or to begin to illustrate his earning capacity, in such cases there is no measure as to the amount of damages, where such minor is entitled to recover therefor, except the enlightened consciences of impartial jurors, guided by all the facts and circumstances of the particular case. . . .

*Colorado Utilities Corp. v. Casady, supra,* 89 Colo. at 166, 300 P. at 605.

In *Casady,* the defendant objected to the instruction on a number of grounds, *inter alia,* the fact that there was no evidence in the record to support the damages, and that it was error to leave the determination of damages to the enlightened consciences of impartial jurors. The supreme court concluded the instruction was not open to objection on the grounds stated.

■ Other courts have also concluded that it is not possible to provide evidence of the value of the future lost wages of a minor and that the decision of whether to award such damages and the amount thereof is left to the sound judgment and experience of the jury. *See Detroit Taxicab & Transfer Co. v. Pratt,* 2 F.2d 193 (6th Cir.1924) (jury would not benefit from expert testimony on loss of wages even if such an expert could be qualified); *J.S. Betts Co. v. Hancock,* 139 Ga. 198, 77 S.E. 77 (1912) (impossible to give evidence as to pecuniary value of future lost wages and issue is necessarily left to sound judgment, experience, and conscience of the jury); *Capriotti v. Beck,* 264 Minn. 39, 117 N.W.2d 563 (1962); *Buckry–Ellis v. Missouri Pacific Ry. Co.,* 158 Mo.App. 499, 138 S.W. 912 (1911) (impossible to give evidence of pecuniary value of infant's future earning capacity and matter is left to sound judgment, experience, and conscience of jury); *Doremus v. Atlantic Coast Line R.R.,* 242 S.C. 123, 130 S.E.2d 370 (1963) (jury could infer future lost wages from nature and extent of injuries and difficulty in determining amount does not prevent award); *Weaver v. Wheeling Traction Co.,* 91 W.Va. 528, 114 S.E. 131 (1922) (jury's view of injuries sufficient to determine earning power had been decreased); *Allen v. Bonnar,* 22 Wis.2d 221, 125 N.W.2d 570 (1963).

Therefore, we conclude that it was not error for the trial court to submit the issue of post-majority lost future earning capacity or lost wages to the jury under a general damages instruction without any evidence of the amount or measure of the loss. Further, we do not agree with the defendant's parallel assertion that the amount of the damages for post-majority loss of earning capacity shows that the jury verdict was the result of passion, prejudice, or corruption.

## II.

Defendant next contends that the trial court erred in denying her a new trial on the issue of physical impairment damages. As her basis for this contention, defendant argues that the jury was confused as to how to complete the special verdict form and that, therefore, the verdict form did not accurately reflect the jury's verdict. We agree that remand for further proceedings concerning this award is required.

Here, three of the six jurors signed affidavits describing an error in the special verdict. These affidavits, which were prepared by defendant's investigator, stated:

The award of $1,136,000.00 for Question C [physical impairment] was the sum of the award for Question A [noneconomic damages not including physical impairment] of $696,000.00 and Question B [economic damages] of $440,000.00.

We intended that our total verdict was to be the amount entered on Line 'C', and did not intend that the amount on Line 'C' be added to the amounts on Lines 'A' and 'B'. We intended our total verdict to be the amount on Line 'C'.

An additional two of the six jurors signed affidavits, also prepared by defendant's investigator, which restated the first, but not the second, paragraph, of the other jurors' affidavits quoted above.

Plaintiff also submitted affidavits signed by jurors which, in general terms, indicate that the jurors were diligent in the performance of their duties. Plaintiff's affidavits are silent, however, on the issue of the verdict form.

Plaintiff argues that this court cannot consider the affidavits because such an examination is prohibited by CRE 606(b). That rule, as pertinent here, prohibits the consideration of jurors' affidavits that address:

any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. . . .

■ CRE 606(b) codifies a previously existing common law rule that was intended to protect the integrity and finality of jury verdicts and to guard against harassment or coercion of jurors following the announcement of their verdict. *Santilli v. Pueblo,* 184 Colo. 432, 521 P.2d 170 (1974). Accordingly, CRE 606(b) precludes admission or consideration of juror testimony that concerns any matter or statement occurring during the course of the jury's deliberations, or that concerns the mental processes of the jurors in arriving at a verdict. *See Rome v. Gaffrey,* 654 P.2d 333 (Colo.App.1982).

■ However, the rule does not bar a juror statement that, because of a mistake or oversight, the announced verdict is not the verdict upon which an agreement had been reached. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[4] at 606–32 (1982); see also *Young v. United States,* 163 F.2d 187 (10th Cir.1947), *cert. denied,* 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947).

■ Here, the jurors' affidavits submitted by the defendant indicate that the announced verdict was not the verdict upon which the jury had agreed. That inquiry does not involve an examination of the mental processes by which the jurors arrived, or failed to arrive, at their verdict. The inquiry is limited to a determination of what verdict was actually agreed upon by the jury. Therefore, neither the affidavits nor the inquiry is prohibited by CRE 606(b).

■ In light of the affidavits submitted by defendant, we conclude that it is necessary to remand for further proceedings to determine whether, in fact, the announced jury verdict accurately reflects the verdict reached by the jury at the conclusion of its deliberations. If it does not, the trial court should consider whether a new trial is required and, if required, on what issues.

### III.

Defendant next contends that the judge who presided at the trial erred in granting plaintiff's motion to recuse himself following the verdict. We disagree.

■ After the conclusion of the trial, the trial judge recused himself at the plaintiff's request because of statements the judge had made to third parties to the effect that the verdict was excessive. Plaintiff's motion for recusal also revealed the existence of a history of animosity between the trial judge and plaintiff's counsel.

■ With respect to a judicial proceeding, "[b]ecause a judge's bias or prejudice against an attorney can adversely affect the party

represented by the attorney, disqualification should be required when a judge so manifests an attitude of hostility or ill will toward an attorney that the judge's impartiality in the case can reasonably be questioned." *S.S. v. Wakefield,* 764 P.2d 70, 73 (Colo.1988).

Here, however, defendant has failed to assert or prove any prejudice to her resulting from the recusal of the trial judge. Therefore, in our view, she has no complaint.

## IV.

On cross-appeal, plaintiff argues that Colorado's noneconomic damage cap is unconstitutional and violates plaintiff's rights to a remedy, due process, and equal protection. We disagree.

Section 13–21–102.5(3)(a), C.R.S.1999, governs limitations on damages for noneconomic loss or injury, and states, in pertinent part:

> In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor.
>
> . . .

Here, the trial court reduced plaintiff's noneconomic damage award from $696,000 to $250,000, stating that there was no clear and convincing evidence that the sum should be exceeded.

■ Plaintiff argues that the cap on noneconomic damages violates due process and equal protection because two juries could arrive at the same verdict, but different judgments may result. However, in *Scharrel v. Wal–Mart Stores,* 949 P.2d 89 (Colo.App. 1997) *(cert. denied,* Jan. 20, 1998), a division of this court held that § 13–21–102.5 does not violate equal protection or due process under either the state or federal constitutions, or deny access to the courts under the state constitution. *See also Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993). We agree with *Scharrel* and, thus, conclude that the statute is not unconstitutional.

The cause is remanded to the trial court for further proceedings with respect to the award of physical impairment damages in accordance with the views expressed in this opinion. The judgment is otherwise affirmed.

Judge MARQUEZ and Judge VOGT concur.