**David STEWART, Jr., minor, by and through his next friend and mother, Chiquita STEWART, Petitioner,**

v.

**Velma I. RICE, Respondent.**

No. 00SC970.

Supreme Court of Colorado, En Banc.

May 13, 2002.

As Modified on Denial of Rehearing June 3, 2002.

---

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, Colorado, Attorney for Petitioner.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Brian C. Proffitt, Englewood, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

The court of appeals in *Stewart v. Rice*, 25 P.3d 1233 (Colo.App.2000) considered juror affidavits in directing the trial court to review its previous denial of a new trial motion. We hold that Colorado Rule of Evidence 606(b) barred consideration of the juror affidavits because they did not address matters within the rule's two exceptions: extraneous prejudicial information improperly brought to the juror's attention or improper outside influence exerted upon a juror.

After the trial court discharged the jury, defense counsel obtained five juror affidavits through an investigator and then used them to support a new trial motion. Plaintiff's counsel then obtained counter-affidavits from the same five jurors, rejecting what they had said in the defense affidavits.

The case had gone to a six person jury on the issue of damages only. The trial court instructed the jury in the use of a special verdict form containing three separate lines for the entry of noneconomic, economic, and physical impairment damages. The jury returned a verdict for $696,000.00 in noneconomic damages, $440,000.00 in economic damages, and $1,136,000.00 in physical impairment damages.

The trial court read the written verdict aloud verbatim, and then polled each juror at the request of defense counsel. Each juror answered "yes" to the trial court's question, "Is that your verdict in this case?"

Defense counsel realized later that the sum of the economic and noneconomic damages amounted to $1,136,000.00, the same amount the jury had entered on the third line for physical impairment damages. Defense counsel sent an investigator to contact the jurors. He did so repeatedly. Five of the six jurors signed affidavits which defense counsel offered to demonstrate that the jury

did not intend to make an award for physical impairment damages. Instead, so the defense alleged in its new trial motion, the jury meant the third line of its written verdict to state the total of its damages award. When plaintiff's counsel contacted the same five jurors, they executed counter-affidavits. These affidavits reaffirmed what the jurors had said when polled by the trial court, that the recorded verdict was theirs.

We determine that the affidavits were inadmissible under Colorado Rule of Evidence 606(b).[1] Accordingly, the court of appeals should have excluded the affidavits from consideration. We reverse and reinstate the jury's verdict and the trial court's judgment.

### I.

This lawsuit arose from a motor vehicle accident in Colorado Springs. The Petitioner, David Stewart ("Stewart"), the plaintiff in the trial court, was riding as a passenger in a vehicle driven by his mother, Chiquita Stewart, when a vehicle driven by the defendant, Velma Rice ("Rice"), the Respondent in this case, turned onto the street in front of the Stewarts' car and the two vehicles collided. Stewart suffered injuries to his neck, back, and nervous system and sued Rice.

The case went to the jury on the issue of damages only. Special Verdict Form B required the jury to answer two questions: "Did the plaintiff, David Stewart, Jr., incur injuries, damages or losses?" and "Was the defendant, Velma I. Rice's, negligence a cause of any of the injuries, damages or losses claimed by the plaintiff?" Because the jury answered "yes" to both questions, it proceeded to answer three additional questions regarding its award of damages in three separate categories. The jury answered each question as follows:

    a. What is the total amount of damages, if any, incurred by the plaintiff for noneconomic losses or injuries, excluding any damages for physical impairment? Noneconomic losses or injuries are those losses or injuries described in numbered paragraphs 1 and 5 of Instruction 12. You should answer "0" if you determine there were none.

    **ANSWER: $ *696,000.00***

    b. What is the total amount of damages, if any, incurred by the plaintiff for economic losses, excluding any damages for physical impairment? Economic losses are those losses described in numbered paragraphs 2 and 3 of Instruction 12. In computing the amount of the economic losses incurred by the plaintiff, you must exclude those amounts you are instructed to exclude in Instruction 12. You should answer "0" if you determine there were none.

    **ANSWER: $ *440,000.00***

    c. What is the total amount of damages incurred by the plaintiff for physical impairment? You should answer "0" if you determine there were none.

    **ANSWER: $ *1,136,000.00***

In regard to Paragraph c, the trial court instructed the jury to:

> State your answer to the following questions relating to the damages incurred by the plaintiff and caused by the negligence of defendant . . . .
>
> . . . .
>
>     c. What is the total amount of damages incurred by the plaintiff for physical impairment? You should answer "0" if you determine there were none.

No part of the court's instructions or the verdict form asked the jury to calculate or enter its award of total damages for all three categories.

Each of the jurors signed the special verdict form. Upon receiving the verdict quoted above, the trial court read it back verbatim to the jury. It then polled the jurors individually, at the request of defense counsel. Each juror answered "yes" to the trial court's question, "Is that your verdict?"

Pursuant to section 13–21–102.5, 5 C.R.S. (1998), the trial court reduced the noneconomic damages award of $696,000.00 to $250,000.00. It then totaled the amounts for

---

1. We granted certiorari on the following issue: "Whether the court of appeals misapplied C.R.E. 606(b) and prior precedent by accepting certain jury affidavits and remanding the case for a hearing to determine whether the verdict recorded was the verdict intended by the jury."

the three categories of damages, calculated and added the interest owed, and entered judgment for Stewart in the amount of $2,925,640.00.[2]

After the trial court had discharged the jury, Rice's counsel directed a private investigator to obtain the signatures of jurors on form affidavits interpreting the jurors' intent and the meaning of the verdict they had signed. After repeated contacts, five jurors signed Rice's affidavits; the sixth juror refused to sign the affidavit.

Rice moved for a new trial on causation and damages pursuant to C.R.C.P. 59. She contested the jury's verdict on grounds that (1) it was the product of "passion, prejudice or other ill motive"; (2) "the jury acted in reckless disregard of the instructions of law given it and did not even read the verdict form and instruction 12, or if read, misperceived"; and (3) "the impairment verdict was the sum of the other two [damages categories]."

There were six jurors. To prove the jury's intent to make an award of damages different from that appearing on the special verdict form each had signed, Rice offered five juror affidavits. Three of the affidavits stated that:

> The award of $1,136,000.00 for Question C was the sum of the award for Question A of $696,000.00 and Question B of $440,000.00.
>
> We intended that our total verdict was to be the amount entered on Line "C", and did not intend that the amount on Line "C"

be added to the amounts on Lines "A" and "B". We intended our total verdict to be the amount on Line "C".

The other two affidavits omitted the second paragraph.

Stewart's attorney then countered with affidavits by the same five jurors stating that the jury had come to consensus, the written verdict they signed accurately recorded their verdict, they felt pressured into signing the defense affidavits, the defense investigator had contacted them repeatedly, and the investigator had made them feel like "idiots."[3] One of these jurors also signed a separate affidavit reciting that the investigator had said the jury verdict was excessive and a $50,000.00 settlement offer had been discussed between the parties before trial. The sixth juror refused to execute any affidavit.

Citing Colorado Rule of Evidence 606(b), Stewart moved to strike the defense affidavits. Stewart also filed a "Motion to Stop Jury Harassment" with affidavits of two jurors. Because the trial court did not rule on Rice's new trial motion, it was denied by operation of C.R.C.P. 59(j).

Rice appealed. She argued in her briefs to the court of appeals that the evidence did not support the economic damages award. She did not challenge the sufficiency of the evidence for the physical impairment award. Instead, referring to the amount the jury placed on the physical impairment line of its signed verdict, she contended that: "We know from the juror affidavits following trial that there was a mistake of more than

---

2. This amount did not include costs and interest in connection with the judgment, which matter the trial court should address on remand.

3. A typical counter-affidavit recited, in part:
   We all reached a consensus after carefully reading and studying the jury instructions. There was no clerical error at the time we filled out our jury form. Each one of us agreed on the amount we entered in each of the three categories for noneconomic injury, for economic injury and for impairment. All of us knew what these figures were at the time we signed the verdict form. I and the rest of the jurors were polled and we all agreed that this was our verdict.
   . . . .
   This special investigator showed me affidavits that were signed by other jurors in the case. I

felt that I was compelled to sign affidavits if other jurors had agreed that this, in fact, had occurred.
   . . . .
   Since the verdict, I have been repeatedly contacted by the investigator and he has shown me affidavits of other jurors and discussed with me in detail how I might have arrived at certain things. He has made it difficult for me . . . and to some extent confused the events of the jury deliberations. . . . I feel that my jury service was a wasted effort, that it was done in vain and that I and the other jurors are being accused of being idiots or not doing our job properly. I now have very negative and bad feelings about the system. I felt that the criticism of our performance was offensive.

$1,000,000.00 in just one line of the verdict form."

The court of appeals rejected Rice's contention that the evidence did not support the jury's award for economic damages in the amount of $440,000.00. The court of appeals rejected Stewart's cross-appeal, which alleged that Colorado's noneconomic damages cap was unconstitutional. Based on the defense affidavits, the court of appeals ordered the trial court to inquire into the jury's verdict and to consider granting a new trial. *Stewart*, 25 P.3d at 1237. The court of appeals affirmed the trial court's judgment in all other respects.

We reverse the judgment of the court of appeals and reinstate the jury's verdict and the trial court's judgment.

## II.

We hold that CRE 606(b) barred the court of appeals from considering the juror affidavits because they did not address matters within the rule's two exceptions: extraneous prejudicial information improperly brought to the juror's attention or improper outside influence exerted upon a juror.

We proceed with our analysis by examining Colorado's common law and CRE 606(b), which codified the common law and contains two exceptions. We also examine the basis for the clerical error exception. We point out that our standard jury instruction allowing post-verdict contact between jurors and parties or their attorneys does not allow the abuse of the jurors and the jury system that occurred in this case. Finally, we determine that the affidavits in this case are inadmissible under CRE 606(b), and defense counsel established no basis under C.R.C.P. 60(a) for clerical error.

CRE 606(b) is a broad ban against the solicitation and use of juror testimony, affidavits, or statements addressing the validity of a jury verdict. The rule provides two limited exceptions. The rule provides:

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the juror's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

CRE 606(b).

C.R.C.P. 60(a) addresses clerical error. This rule provides:

**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal such mistakes may be so corrected before the case is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

C.R.C.P. 60(a). These rules severely restrict contacting a juror to obtain testimony, affidavits, or statements regarding a verdict.

### A.

### Colorado Common Law

Long before CRE 606(b), we adopted Lord Mansfield's rule [4] prohibiting juror testimony about their deliberations and verdict. Our common-law cases identified a broad prohibi-

4. Lord Mansfield established the rule that a juror could not "allege his own turpitude." *Vaise v. Delaval*, 99 Eng. Rep. 944 (K.B. 1785) (refusing to accept into evidence the affidavits of jurors to show they had arrived at their verdict by lot).

Jurisdictions in the United States widely adopted this common-law rule as their own. *See Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

tion against impeaching a verdict through juror testimony. Generally, after leaving the courtroom, jurors could not testify to any matter concerning the intent or meaning of their verdict or their thought processes in reaching it. *See Wray v. Carpenter,* 16 Colo. 271, 273, 27 P. 248, 248 (1891); *Knight v. Fisher,* 15 Colo. 176, 180, 25 P. 78, 80 (1890).

We applied this rule in a number of cases. *See, e.g., Richards v. Richards,* 20 Colo. 303, 303–04, 38 P. 323, 323–24 (1894) (rejecting affidavits alleging that jurors failed to consider appellant's counterclaim and stating that "no affidavit, deposition or other sworn statement of a juror will be received to impeach the verdict"); *Johnson v. People,* 33 Colo. 224, 242–43, 80 P. 133, 139 (1905) (stating that "[i]t is scarcely necessary to say that a juror will not be permitted to impeach his own verdict by affidavit"); *Richards v. Sanderson,* 39 Colo. 270, 282, 89 P. 769, 773 (1907) (stating that "[i]t is well settled that the affidavit of a juror cannot be received to impeach a verdict"); *Kreiser v. People,* 199 Colo. 20, 22, 604 P.2d 27, 28 (1979) (holding that the trial judge erred in re-empanelling the jury for a poll and subsequent correction of an error in the verdict form).

Our common-law cases also addressed limited exceptions to this rule. These cases foreshadowed exceptions to CRE 606(b)'s broad prohibition on jury testimony or affidavits. *See, e.g., Butters v. Wann,* 147 Colo. 352, 356–58, 363 P.2d 494, 496–97 (1961) (allowing juror affidavit regarding juror's independent, extra-judicial investigation during trial into decedent's drinking habits); *Wharton v. People,* 104 Colo. 260, 265–66, 90 P.2d 615, 617–18 (1939) (allowing consideration of juror affidavit alleging improper, prolonged coercion by other jurors which compelled juror to assent to death penalty verdict).

### B.

### CRE 606(b)

We adopted CRE 606(b) in 1980. Substantially similar to its federal counterpart, CRE 606(b) is an exclusionary rule codifying Lord Mansfield's rule; it contains two exceptions.

■ When our rule is similar to the federal rule, we may look to the federal authority for guidance in construing our rule. *Air Communication & Satellite, Inc. v. EchoStar Satellite Corp.,* 38 P.3d 1246, 1251 (Colo.2002). CRE 606(b)'s federal counterpart is "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." *Tanner v. United States,* 483 U.S. 107, 121, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). A commentator emphasizes the breadth of the federal rule's prohibition against turning the jurors into witnesses:

> It would have been hard to paint with a broader brush, and in terms of subject, Rule 606(b)'s exclusionary principle reaches everything which relates to the jury's deliberations, unless one of the exceptions applies.

Christopher B. Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),* 57 Neb. L. Rev. 920, 935 (1978).

■ CRE 606(b) applies to all civil and criminal cases. *Ravin v. Gambrell,* 788 P.2d 817, 820 (Colo.1990). It broadly prohibits using juror testimony to contest a verdict. A juror:

> may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.

CRE 606(b). The rule bars affidavits and statements, as well as testimony:

> Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*Id.* CRE 606(b) embodies the common-law rule protecting and preserving jury deliberations:

> The first half of the first sentence of Rule 606(b) represents the embodiment of the common law tradition of protecting and preserving the integrity of jury delibera-

tions by declaring jurors generally incompetent to testify as to any matter directly pertinent to, and purely internal to, the emotional or mental processes of the jury's deliberations.

Arthur Best et al., *Colorado Evidence: 2001 Courtroom Manual* 137 (2000). CRE 606(b) provides two narrow exceptions. A juror:

may testify on the question whether extraneous prejudicial information was improperly brought to the juror's attention or whether any outside influence was improperly brought to bear upon any juror.

*Id.*

■ CRE 606(b) has three fundamental purposes: to promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion. *See Ravin*, 788 P.2d at 820; *Santilli v. Pueblo*, 184 Colo. 432, 433–34, 521 P.2d 170, 171 (1974).

■ These purposes also underlie other Colorado law protecting the jury process. While a jury may change or modify its verdict up to the point the trial court accepts the verdict and discharges the jury,[5] the court may not recall the jurors for this purpose once they leave the judge's control. *Montanez v. People*, 966 P.2d 1035, 1037 (Colo. 1998). "This rule helps to ensure that jury verdicts will not be tainted by any outside influence ... and promotes the finality of verdicts." *Id.*

■■ During post-trial and appellate proceedings, courts must view the jury's verdict in the light most favorable to it. *See Bohrer v. DeHart*, 961 P.2d 472, 477 (Colo.1998) ("We defer to jury verdicts when jurors have been properly instructed and the record contains evidence to support the jury's find-

ings."). Special verdict forms and the instructions that go with them assist a jury with its deliberations; signing the verdict form acknowledges the verdict as the product of each juror's deliberation. *See, e.g., id.* at 477–78.

■ CRE 606(b) protects the jurors in performing their public service and their post-verdict privacy. It acts to restrain disappointed litigants. The law presumes that jurors have followed the court's instructions and have discharged their duties faithfully. *Bear Valley Church of Christ v. DeBose*, 928 P.2d 1315, 1331 (Colo.1996).

Under CRE 606(b), as with our common law, we have excluded juror testimony or affidavits divulging juror deliberations, thought processes, confusion, mistake, intent, or other verdict impeaching grounds. *See, e.g., People v. Garcia*, 752 P.2d 570, 584 (Colo.1988) (refusing to accept affidavits regarding jurors' mental processes); *People v. McCoy*, 764 P.2d 1171, 1177 (Colo.1988) ("It is well established ... that a juror's affidavit that attempts to explain the mental processes of the jury cannot be used to impeach a jury verdict."); *Neil v. Espinoza*, 747 P.2d 1257, 1261, 1261–62 (Colo.1987) (concluding that juror's affidavit addressed "the sort of 'mental process' into which the litigants and the court may not inquire"); *Crespin v. People*, 721 P.2d 688, 691 n. 6 (Colo.1986) (barring consideration of juror testimony asserting jurors' failure to consider one of the charges against defendant).

Other jurisdictions are in accord.[6] Under circumstances analogous to the case before us, courts have refused to allow jurors to revisit their damages verdict. The West Virginia Supreme Court rejected juror affidavits

---

**5.** In *Kreiser v. People*, 199 Colo. 20, 23 n. 1, 604 P.2d 27, 29 n. 1 (1979) we narrowed the holding of *Schoolfield v. Brunton*, 20 Colo. 139, 142, 36 P. 1103, 1104 (1894). In *Kreiser*, we held that the court could not reassemble the jurors and poll them regarding the intent of their verdict after the jury had dispersed.

**6.** Most states have rules mirroring Federal Rule of Evidence 606(b). *See, e.g.*, Ala. R. Evid. 606(b); Alaska R. Evid. 606(b); Ariz. R. Evid. 606(b); Ark. R. Evid. 606(b); Conn.Super. Ct. § 42–33; Conn.Super. Ct. § 16–34; Del. R.

Evid. 606(b); Idaho R. Evid. 606(b); Burns I.R.E. 606(b); Iowa R. Evid. 606(b); Me. R. Evid. 606(b); Md. R. 5–606(b); Minn. Evid. R. 606(b); Miss. R. Evid. 606(b); Neb.Rev.Stat. § 27–606; N.M. R. Evid. 11–606(b); N.D. R. Evid. 606(b); Ohio R. Evid. 606(b); 12 Okla. Stat. § 2060(b); Pa. R. Evid. 606(b); R.I. Evid. R. 606(b); S.C. R. Evid. 606(b); S.D. Codified Laws § 19–14–7; Tenn. Evid. R. 606(b); Tex.R. Evid. 606(b); Utah R. Evid. 606(b); Vt. R. Evid. 606(b); W. Va. R. Evid. 606(b); Wis. Stat. § 906.06(2); Wyo. R. Evid. 606(b).

in *McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170, 172–74 (1996). The trial court had allowed juror testimony about jury confusion in apportioning fault when calculating its damage award, and then entering its verdict on the verdict form. The court said:

> If in fact the jurors did reduce the amount of damages awarded to Mr. McDaniel before writing their damage calculations on the verdict form, this constitutes confusion regarding the comparative negligence principles. A juror's confusion regarding the law is treated as intrinsic to the deliberative process itself.

*McDaniel*, 480 S.E.2d at 175.

The Maine Supreme Court has held juror testimony about damages calculations to be inadmissible. *See Taylor v. Lapomarda*, 702 A.2d 685, 689 (Me.1997); *see also Chalmers v. City of Chicago*, 88 Ill.2d 532, 59 Ill.Dec. 76, 431 N.E.2d 361, 365 (1982) (prohibiting inquiry of jurors regarding their intent and possible confusion). Maine has adopted a plain meaning application of the rule and its specified exceptions, because the rule promotes:

> (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harm[ ] from tampering and harassment by disappointed litigants; [and] (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*Lapomarda*, 702 A.2d at 688.

The First Circuit has prohibited inquiry under the federal rule into the jury's intent in awarding damages. *See Plummer v. Springfield Terminal Ry. Co.*, 5 F.3d 1, 5 (1st Cir.1993). *But see McCullough v. Consol. R. Corp.*, 937 F.2d 1167, 1172 (6th Cir.1991) (permitting the trial court to inquire into the

damages verdict before the jury left the jury room, and pointing out that the trial court's amendment of the verdict stemmed "from jurors' own volition and not from any overreaching by the parties or their counsel"); *see also Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1547 (10th Cir.1993) (permitting trial court to ask the jury foreman how properly to read the jury's verdict).[7]

Our case law supports a plain meaning application of CRE 606(b) and its two stated exceptions. *See, e.g., Harper v. People*, 817 P.2d 77, 86 (Colo.1991) (reversing conviction and remanding for a new trial because trial court refused to entertain juror testimony about potential for unfair prejudice from widespread media publicity about the trial); *Ravin*, 788 P.2d at 821 (finding a reasonable possibility that comments by bailiff, overheard by jurors, influenced the jury's ultimate verdict); *Wiser v. People*, 732 P.2d 1139, 1143 (Colo.1987) (examining juror testimony to determine whether extraneous influence, in this case consultation of a dictionary, resulted in prejudice to the defendant, but deciding ultimately that the use of the dictionary, while improper, did not require reversal of the conviction); *Alvarez v. People*, 653 P.2d 1127, 1131 (Colo.1982) (allowing juror testimony to show that a juror's use of a dictionary during trial substantially prejudiced the defendant).

Under Colorado law, a party desiring to challenge a jury verdict must pursue remedies not involving juror testimony, except as CRE 606(b) provides. For example, a party may move for a new trial, *see* C.R.C.P. 59(a)(1); may move for judgment notwithstanding the verdict, *see* C.R.C.P. 59(a)(2); may challenge the verdict as excessive, *see Higgs v. Dist. Court*, 713 P.2d 840, 860–61 (Colo.1985); or may pursue other mechanisms under the law for relief.

C.R.C.P. 59 requires affidavits in connection with a new trial motion made for grounds listed in C.R.C.P. 59(d), but CRE 606(b) acts to preclude juror affidavits as a

---

**7.** The Tenth Circuit's opinion suggests, but does not explicitly state, that the trial court asked this question prior to discharging the jury.

basis for seeking post-trial relief, unless the CRE 606(b) exceptions apply.

Some courts recognize clerical error as a reason to allow juror testimony into evidence. Because Rice attempts to fit within a clerical error exception, we now discuss this potential exception.

## C.

### Clerical Error

The Wisconsin Supreme Court allows juror testimony about clerical error, but only if all of the jurors agree that their verdict was incorrectly reported and if the party requesting correction "promptly" informs the court. *See State v. Williquette,* 190 Wis.2d 677, 526 N.W.2d 144, 153 (1995).

The Mississippi Supreme Court points out that clerical error occurs when the foreperson incorrectly transcribes the jury's verdict. *Martin v. State,* 732 So.2d 847, 853 (Miss.1998) ("The error here is not 'clerical,' as would be the case where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated that the defendant was 'guilty' when the jury had actually agreed the defendant was not guilty."). Some federal decisions also address clerical error. *See id.* at 853–54 (discussing federal cases).

Maryland has a strong policy against inquiring into jury verdicts. *See Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860, 870 (1982) (stating that "[r]egardless of the rule in other jurisdictions, in Maryland, it is well settled that a juror cannot be heard to impeach his verdict, whether the jury conduct objected to be misbehavior or mistake").

Maine gives a plain meaning application to Rule 606(b), finds no exception for clerical error in that rule, and allows consideration of clerical error only under its counterpart to our C.R.C.P. 60(a), which addresses clerical error. *See Lapomarda,* 702 A.2d at 689; *accord McDaniel,* 480 S.E.2d at 178.

We agree with the Maine Supreme Court's approach. We give effect to both CRE 606(b) and C.R.C.P 60(a) as they are written. Clerical errors in judgments, orders, or other parts of the record may occur at any time during a proceeding. C.R.C.P. 60(a) permits their correction by the court sua sponte or upon motion of any party.

The clerical error must be readily ascertainable, typically upon the face of the document. *See In re Marriage of Kelm,* 878 P.2d 34, 36 (Colo.App.1994) (remanding case to trial court to correct a written order that referred to the husband both as Respondent and Petitioner because the order's reasonable meaning was clear), *aff'd in part, rev'd in part on other grounds,* 912 P.2d 545 (Colo. 1996).

Clerical error in a verdict form does not include an alleged error that either alters the legal effect of the jury's verdict, *see Chalmers,* 59 Ill.Dec. 76, 431 N.E.2d at 365, or addresses the jury's misunderstanding or misapplication of the court's jury instructions. CRE 606(b) bars such an inquiry. *See Santilli v. Pueblo,* 184 Colo. 432, 433–34, 521 P.2d 170, 171 (1974).

Clerical error corrections to a jury's verdict are disfavored. When the trial court has polled each juror and the jurors state that the verdict is theirs, a challenge for clerical error will rarely be successful. *See Mueller, supra,* at 959; *see also United States v. Chereton,* 309 F.2d 197, 200 (6th Cir.1962). Colorado has a strong presumption in favor of upholding verdicts that jurors have acknowledged as their own:

> Here the record is clear. The trial court read the verdict for petitioner in open court, and all the jurors assented to it. Each juror was questioned, reinforcing the evidence of the jury's intentions. The verdict for the petitioner in open court is the verdict of the jury.

*Tyler v. Dist. Court,* 200 Colo. 254, 257, 613 P.2d 899, 901 (1980).

## D.

### Abusive Practices

Colorado law recognizes that jurors, upon leaving the courtroom, may encounter influences that cause them to question their verdict. The law acts to prevent unsettling of jury verdicts by such encounters. *See Montanez,* 966 P.2d at 1037.

To avoid abusive practices towards jurors after completion of their service, the First Circuit Court of Appeals prohibits post-verdict interviews of jurors by counsel, litigants, or their agents, except under the supervision of the district court and then only in such extraordinary situations as are deemed appropriate. *See United States v. Kepreos,* 759 F.2d 961, 967 (1st Cir.1985). That court decries unbridled post-verdict questioning of jurors:

> Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties.

*Id.*

The Second Circuit Court of Appeals said that "complicity by counsel in a planned, systematic, broad-scale, post-trial inquisition of the jurors by a private investigator or investigators is reprehensible." *United States v. Brasco,* 516 F.2d 816, 819 (2d Cir. 1975).

The Federal District Court for Colorado has a local rule prohibiting any attorney or party from contacting a juror without written authority signed by the trial judge. *See* D.C. Colo. LR 47.2.

In contrast, Colorado's standard post-verdict jury instruction allows attorneys, parties, and investigators to speak with willing jurors. *See* Colorado CJI–Civ. § 1:16. The trial court delivered such an instruction here:

> The attorneys or the parties, at the conclusion of a jury trial, may desire to talk with the members of the jury concerning the reasons for their verdict. For your guidance, you are advised that it is entirely proper for you to talk with the attorneys or the parties, and you are at liberty to do so. However, you are not required to do so. Whether you do so or not is entirely a matter of your own choice. Undoubtedly, your decision will be respected. *However, if* you decline to discuss the case and an attorney or *a party or an investigator* persists in discussing the case over your objection or *becomes critical of your service as a juror, please report the incident to me.*

(Emphasis added.)

Under this instruction, jurors are free to discuss any aspect of their service they care to, including their deliberations, how they viewed the evidence and reached their verdict, and how they view the intent and meaning of their verdict, but none of this can become evidence unless one or both of the CRE 606(b) exceptions apply to the case. CJI–Civ. § 1:16 reinforces the purposes of CRE 606(b) and protects the administration of justice, by requiring a juror to report to the court any criticism that an attorney, investigator, or party makes of the juror's service.

Attorneys, parties, and investigators must respect the language of CRE 606(b) and CJI–Civ. § 1:16 and their purposes. Colorado's safe zone for post-verdict contact with jurors depends on responsible professional conduct. Attorneys may benefit from learning how the jurors viewed their case. But, they may not make jurors witnesses except under the provisions of 606(b). This requires a proper showing that the juror testimony, affidavit, or statement is admissible under the rule's exceptions.

The case before us demonstrates that abuse of the jurors and the jury system can occur if attorneys, or persons acting under their direction, do not respect: (1) CRE 606(b)'s broad prohibition against making jurors witnesses; and (2) the safe-zone purpose of CJI–Civ. § 1:16 allowing post-verdict contact.

An attempt to make the jurors witnesses without a basis in CRE 606(b)'s exceptions constitutes an abuse of the rule, the jury instruction, the jurors, and the administration of justice. According to the jurors' counter-affidavits, the investigator acting under the attorney's direction: (1) criticized the jurors' performance and their verdict; (2) referred to pre-trial settlement discussions; (3) said the jury's verdict was excessive; and (4) whipsawed jurors into signing the form

affidavits by saying that other jurors had signed the affidavit.[8]

Plaintiff's counsel responded to defense counsel's affidavits by obtaining plaintiff-prepared affidavits from the same five jurors, in which they recanted their defense-prepared affidavits. These jurors were rightfully upset about the judicial system as a result of post-verdict, attorney-initiated interrogation. Yet, the defense counsel affidavits had no basis in CRE 606(b)'s exceptions or C.R.C.P. 60(a)'s provision for clerical error.

We now turn to the inadmissibility of the defense juror affidavits in this case.

### E.

### Rice's Juror Affidavits Are Inadmissible

The affidavits in this case violate CRE 606(b) and are inadmissible. They testify to the jury's deliberative process and the intent and meaning of the jury's verdict, not either of the rule's two exceptions.

In her Motion for Post–Trial Relief, Rice used the affidavits to impeach the verdict. She alleged that the jury had not read the court's instructions, or had misunderstood them, and the court could repose no confidence in the verdict:

> The essence of Defendant's position on the subject of a new trial is the conclusion is inescapable that the verdict form was not read, the instruction (number 12) was not read, the instruction number 3 regarding surmise and conjecture was not read, if these instructions were either not read or not understood, and certainly not applied,

how can the Court repose any confidence in the jury's analysis of any issue?

None of these grounds falls within the two CRE 606 exceptions.

On appeal, Rice changed her tactic to argue that the affidavits proved clerical error:

> CRE 606(b) does not preclude juror affidavits testifying to a jury's post-deliberative conduct. Post-deliberative conduct is that conduct occurring after the jury has reached its verdict and concluded its deliberations. Since post-deliberative conduct necessarily occurs after the conclusion of the jury's deliberations, courts have held that it is not subject to 606(b).
>
> . . . .
>
> Post deliberative conduct includes the occurrence of clerical error, the unintended rendering of a verdict due to a mistake in the ministerial act of recording the verdict. The affidavits at issue before this court testify to the occurrence of a clerical error following this jury's deliberations.

■ We conclude that Rice attempted to impeach the jury's verdict with inadmissible evidence she was trying to characterize as admissible. Clearly, Rice's attorney dispatched the investigator for the purpose of contradicting the verdict. The attorney wanted to show that the signed verdict was not what it appeared to be. The object was to prove that the jury: (1) did not intend to award Stewart damages for physical impairment; (2) forgot to make a physical impairment award; (3) confused the third interrogatory in the special verdict form as asking for the total damages award; (4) disregarded the court's instructions and the special verdict

---

**8.** One of the affidavits specifically addressed the investigator's conduct:
1. I have been contacted several times by a special investigator hired by the defense attorney in this case.
2. That on the first occasion I had to talk to the special investigator, he told me specifically that even $1,000,000.00 was kind of high.
3. That the special investigator stated that before trial they were getting ready to settle the case for $50,000.00.
4. It was my assumption that this $50,000.00 settlement would be coming from [an insurance company] since they were mentioned during jury selection.

5. I think this statement was made to get me to sign an affidavit by suggesting that our verdict was too high.
6. As members of the jury we cooperated with each other, we read the instructions very carefully and considered the damage instructions in arriving at our verdict.
7. I felt that the special investigator was suggesting that we had not acted correctly in awarding damages in the case. It was suggested by him that we had awarded more damages than were appropriate for the case. I interpreted this to be a criticism of my jury service.

form's plain language; or (5) any or all of these.

This inquiry defied the plain language of the written and signed verdict form, the court's instructions, and each juror's affirmation of the verdict through individual trial court polling. The third line of the special verdict form asked the jury if Stewart had incurred damages for physical impairment. The jury answered with the amount of $1,136,000.00. Each juror signed the verdict and answered during polling that the verdict was his or hers.

Nevertheless, defense counsel directed the investigator to contact the jurors, repeatedly invading their privacy at home and work, for the purpose of impeaching the verdict.

The defense inquiry contravened the language and purposes of CRE 606(b). These purposes are to promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion. Agreeing on the contents of the jury's damages verdict was an integral part of the jury's deliberative process, not a ministerial task. The defense affidavits attacked the jurors' performance, an inadmissible arena.

The affidavits the defense obtained from the jurors are inadmissible under CRE 606(b).[9] No matter involving the two CRE 606(b) exceptions allowed the affidavits. All of the jurors had signed this verdict, which specified the amount of the physical impairment award on the special verdict form. Each juror affirmed the verdict in open court upon the trial court's polling. The defense counsel brought no clerical error cognizable under C.R.C.P. 60(a) to the trial court's attention.

The verdict stands.

### III.

Accordingly, we reverse the judgment of the court of appeals. Because the court of appeals affirmed the trial court's judgment in all other respects, we reinstate the trial court's judgment, and we direct the court of appeals to enter its mandate consistent with this opinion.

---

9. We need not address the admissibility of the plaintiff's counter-affidavits, because they would not have been tendered except in response to the defense affidavits.