The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 21, 2023

## 2023COA121

**No. 21CA0311, *People v. Shockey* — Criminal Law — Verdicts or Findings — Special Interrogatories — Inconsistent Verdicts**

As a matter of first impression, a division of the court of appeals considers the proper remedy when a response to a special interrogatory negates an essential element of the substantive offense of conviction. The division in *People v. Brooks*, 2020 COA 25, held that a special interrogatory can negate an element of an offense and that the proper remedy there was the entry of conviction for the lesser included offense. It did not consider the question presented here. The division holds that when a jury's special interrogatory response negates an essential element of the convicted offense, structural error occurs, and the proper remedy is to vacate the conviction.

The partial dissent disagrees that the interrogatory response negated an element of the convicted offense and instead concludes that the jury verdict and interrogatory response were logically inconsistent and mutually exclusive.  The partial dissent would reverse the conviction and grant a new trial.

COLORADO COURT OF APPEALS                                    **2023COA121**

Court of Appeals No. 21CA0311
Arapahoe County District Court No. 17CR3039
Honorable Michael Spear, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jacob Alexander Shockey,

Defendant-Appellant.

JUDGMENT VACATED

Division V
Opinion by JUDGE FREYRE
Yun, J., concurs
Richman*, J., concurs in part and dissents in part

Announced December 21, 2023

Philip J. Weiser, Attorney General, Brock J. Swanson, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2023.

¶ 1     Defendant, Jacob Alexander Shockey, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder. We consider, as a matter of first impression, the proper remedy for an ambiguity created by a special interrogatory response that negates an essential element of the crime of conviction. We conclude that the jury's finding that Shockey did not possess, use, or threaten to use a deadly weapon is inconsistent with its finding of guilt for second degree murder — because the jury was not instructed on complicity — and that the finding negates the identity and causation elements of second degree murder. We further hold that this inconsistency constitutes structural error, and, because the prosecution failed to prove all the elements of the offense, we must vacate the judgment of conviction.

## I.     Background

¶ 2     The trial evidence established the following facts.

¶ 3     Shockey and codefendant, Parus Mayfield, went to a liquor store on Colfax Avenue in Denver. Shockey encountered the victim outside the store and confronted him about twenty dollars' worth of "fronted" crack cocaine for which the victim had not yet paid. The

victim said he had just been released from jail and did not have the money.  Shockey said there was a way the victim could repay him.

¶ 4     Surveillance footage showed that, after this exchange, Shockey, Mayfield, and the victim walked away from the liquor store, west on Colfax Avenue for a block or two.  They entered a dark alley running east-west and parallel to Colfax Avenue.  When the three reached another alley, they turned a corner, out of view of the surveillance cameras.  A few seconds later, Shockey returned from around the corner and walked west down the alley, away from Mayfield and the victim.  Approximately one minute after Shockey left the alley, there was a flash of light in the trees above the alley.  Immediately following the flash, Mayfield ran south, away from Colfax Avenue.  The victim's body was found in the alley.  The coroner testified he died from gunshot wounds.

¶ 5     During their investigation, police identified an eyewitness to the shooting — a woman named Linzy who was the victim's friend.  Linzy struggled with substance abuse and admitted she was drunk and high when she witnessed the shooting and spoke with police.  She said she did not know Shockey or Mayfield by name, but only knew one by the moniker "Tiny" and the other as his brother.

2

Mayfield's Facebook page, which the police accessed, showed he used the moniker "Tiny Looney Tunes," but Linzy provided contradictory statements at trial concerning which man was "Tiny."

¶ 6 During the police investigation, Linzy said she followed the three men into the alley and hid behind a dumpster; then "Tiny" shot the victim and ran south down the alley away from Colfax. During direct examination, she identified Shockey as "Tiny," but she also testified that "Tiny" was the man standing in front of her inside the liquor store, whom a surveillance video showed was Mayfield. And when shown the video, Linzy was adamant that the person dressed in white clothing (Shockey) was not "Tiny."

¶ 7 During cross-examination, Linzy identified Mayfield as "Tiny" in a photo lineup and identified Shockey as "Tiny's" brother. But she never wavered on her claim that the shooter ran south down the alley away from Colfax.

¶ 8 Shortly before trial, Mayfield accepted a plea agreement in exchange for testifying against Shockey. He testified that Shockey shot the victim, and that he did not know Shockey had a gun or intended to shoot the victim. He testified that he thought Shockey was going to beat up the victim because they had previously done

so in an attempt to collect the owed money. He admitted that he ran south down the alley away from Colfax when he heard shots fired.

¶ 9    For his part, Shockey told the police that the victim owed Mayfield money for drugs and that Mayfield had shot the victim. He further claimed that, as they walked down the alley with the victim, he heard Mayfield say he was going to "lay [the victim] down" and thought that Mayfield was going to shoot and kill the victim. The police never recovered a gun.

¶ 10    The prosecution charged Shockey and Mayfield with first degree murder and two crime of violence sentence enhancers. Before trial, the prosecution submitted proposed jury instructions that did not include a complicity instruction. At the close of the evidence, the prosecutor tendered a complicity instruction that the court rejected. The jury acquitted Shockey of first degree murder and convicted him of the lesser included offense of second degree murder. But the jury also found, in a special interrogatory,[1] that

---

[1] In another special interrogatory, the jury found that Shockey caused the death, consistent with the causation element of second degree murder, thereby rendering the interrogatory responses

Shockey had not used, possessed, or threatened the use of a deadly weapon.  The court denied Shockey's post-trial motion to vacate the conviction based on an inconsistent verdict and sentenced him to forty years in the custody of the Department of Corrections, consecutive to an unrelated sentence.

¶ 11    Shockey challenges his conviction on several grounds.  He argues that the inconsistency between the special interrogatory finding and the verdict requires us to vacate his conviction.  He further argues that the trial court erroneously (1) permitted, over defense objection, the prosecutor to extensively voir dire on complicity and equate it to accountability, knowing the trial evidence would not support this theory; (2) refused to inform the prospective jurors of the correct legal definition of complicity; (3) denied his post-trial motion to vacate the conviction based on the inconsistent verdict and juror affidavits showing the jurors relied on the extraneous prejudicial discussion of complicity in voir dire to convict him; (4) admitted prior misconduct evidence in violation of

internally inconsistent, an issue not raised in this appeal.  In any event, this inconsistency does not affect our analysis.

5

*Rojas v. People*, 2022 CO 8; and (5) ordered restitution based on insufficient evidence. Because we agree with Shockey's first contention and vacate his conviction, we need not address his remaining contentions.

## II.    Inconsistent Verdict

¶ 12    Shockey contends that the jury's finding that he did not use, possess, or threaten to use a deadly weapon cannot be reconciled with its decision to convict him of second degree murder. He reasons that this finding established that he was not the shooter and shows the prosecution failed to prove the elements of identity and causation. He further reasons that the only way the jury could have convicted him was if it considered the erroneous complicity discussion during voir dire, since the court never instructed the jury on complicity.

### A.    Additional Facts

¶ 13    During voir dire, the prosecutor discussed complicity liability and used a hypothetical to illustrate the concept:

> Under Colorado law, someone can be guilty as a complicitor and a principal. So I'm going to give you a little bit of a scenario to maybe explain it and then I want to talk with you guys about what you think about complicitor.

6

> So let's talk about a scenario of a robbery of a bank. So you have the getaway driver, you have the lookout and you have the guy that goes in with the mask and the gun. So all three of them decide, you know what, we're going to rob this bank. So the driver drives the lookout, himself, and the robber to the bank. The lookout goes out and stands in front of the bank to look for cops or anyone else. And then you have the guy that goes in and robs the bank and he's got a gun and a mask and points a gun at a teller and gets the money from the bank. Now, under Colorado law, all —

¶ 14    Defense counsel objected based on his understanding that a complicity instruction was not going to be submitted to the jury at the close of the evidence. Ruling to let the prosecutor continue, the court said,

> Well, just so the jury panel is aware, frankly, during jury questioning there's going to be mention made of perhaps certain concepts of law, some examples that have occurred up to this point, and while it might not ultimately be applicable to the case before us, really if this is something that the prosecution would like to pursue, I'll go ahead and let that continue because I think also the Court usually looks at it as an opportunity for jurors to kind of break the ice, so to speak, and provide information as well, perhaps on more pertinent issues.

¶ 15    The prosecutor proceeded to discuss complicity liability and her robbery hypothetical at length. She explained that, under

7

Colorado law, all three defendants in her hypothetical could be found equally guilty of robbery, even though the lookout and the getaway driver did not actually commit the robbery, because they would be liable under complicitor liability. She then asked the jurors whether they would be comfortable holding all the defendants in her hypothetical "accountable" even if some of the defendants did not actually commit the robbery. Many jurors indicated agreement that the "punishment" or "treatment" should be the same for the lookout as for the person who robbed the bank. Many jurors likewise interchanged the term "complicity" with "accountability."

> [PROSECUTOR]: [U]nder Colorado law, all three could be guilty of aggravated robbery, even though we're talking about the lookout, we're talking about the getaway driver, even though they didn't go into the bank and actually rob the bank. What do you think about that?
>
> [PROSPECTIVE JUROR 1]: They're all still complicit.
>
> [PROSECUTOR]: And you're okay with that?
>
> [PROSPECTIVE JUROR 1]: Yeah, I think they all should receive the same treatment.

¶ 16    Addressing another juror, the prosecutor asked

8

[PROSECUTOR]: Does it bother you that the person who didn't have the gun and who wasn't involved in the actual robbery itself inside the bank could be held accountable as the person who went in and robbed the bank?

[PROSPECTIVE JUROR 2]: Yeah, because he knew the guy went in there with a gun. He's complicit in the fact that he's going to go along with whatever happens in the bank. I would think he would be guilty too.

¶ 17   Addressing two other jurors, the prosecutor asked two jurors the following:

[PROSECUTOR]: [B]ack to my scenario, we have the lookout person versus the person that goes in and robs with the gun, should they both be held accountable?

[PROSPECTIVE JUROR 3]: Held accountable, yes, but maybe not to the same amount.

[PROSPECTIVE JUROR 4]: I think everyone should be held accountable to the same extent. They all know what they're getting into . . . . So yeah, if you know that other people's lives are going to be put in danger, you have the opportunity to back out and say no, I don't want to do that, that's your choice but you go ahead and go along with it. And so yes, you should still have the same punishment as anyone else.

¶ 18   Addressing two more jurors, she continued:

[PROSECUTOR]: So you feel good about complicity when we're talking about all three players in my little scenario?

9

[PROSPECTIVE JUROR 5]: Yes.

[PROSECUTOR]: How about you, Mr. [B] . . . .
What do you think, complicity?

[PROSPECTIVE JUROR 6]: Well, I think there's
— we touched upon it here that there might
have been some levels of complicity or
accountability depending on whether, you
know, the event went off as planned . . . . If
somebody goes off the rails, I think they're the
one that has to be accountable for that. I
mean, there is some accountability or
complicity, whatever you want to call it, for all
of them because if you set up the — all set up
the scenario that caused this to happen, but if
somebody actually went off the rails, like I
said, there's some additional accountability for
that person.

¶ 19    During questioning, a few jurors indicated difficulty holding all three defendants "equally accountable" for the robbery.

¶ 20    At this point, the defense again objected and asked the court to read the elements of complicity contained in section 18-1-603, C.R.S. 2023. The court overruled the objection and refused to do so. The prosecutor continued:

[PROSECUTOR]: Mr. M[], what do you think?

[PROSPECTIVE JUROR 7]: Maybe I'm getting
ahead of the curve here, but in terms of
complicity, there's two aspects. One, there's
guilty and innocence and people are complicit
as you described, then they're guilty. I can see
a scenario where maybe the punishment might

10

vary depending upon degree, but that's a
whole other conversation. If people were —
were involved in the planning and knew
something was either going to happen or could
happen, then guilty at that point. I have no
problem.

[PROSECUTOR]: Anyone feel different? Ms.
S[], what do you think?

[PROSPECTIVE JUROR 8]: You know, maybe
like he said, the person who actually pulled
the trigger may have a longer sentence or more
harsher sentence, I can get that, but honestly,
it doesn't really matter what we think, because
if Colorado law has already determined what
that is, then you have to rule by the law. It
doesn't really matter whether you think, oh,
the guy was just the getaway driver, whatever
the law says is what — I mean, that's what I'm
getting from all of this.

¶ 21    During the defense's voir dire, counsel discussed complicity

liability with the potential jurors and provided them the legal

definition of complicity.

¶ 22    Immediately before opening statements, the court instructed

the impaneled jury that it must decide the case based on the legal

instructions provided by the court at the end of trial, and not based

on legal concepts discussed during voir dire.

After the evidence is completed in this case,
then I will present to you what are called
instructions of law. These will be in written

11

form. I am required to read [them] to you and then you'll all get a copy to take back to the jury room, so for your own personal review and for the jury's review as well.

Now, there has been a lot of comment on the law in this case, what might be or might not be applicable, and of course during the course of a trial, things may change a little bit. So what we tell you today about what the law is actually could vary significantly from what you're informed of at the end of the trial itself.

So please keep in mind leeway has been granted for the parties to discuss the law in this case. The fact is if their discussions vary from what I give you at the end of the trial, frankly if my discussions vary from what I g[i]ve you at the end of the trial, those discussions at the end of the case will control your deliberations in this matter.

¶ 23    Neither the prosecution nor defense counsel discussed complicity liability during opening statements.

¶ 24    At the end of the trial, the prosecutor submitted a second set of proposed instructions that included complicity. The court rejected the tendered complicity instruction and found that the prosecutor had not presented sufficient evidence to warrant the instruction. It further found that a complicity instruction would "completely confuse the issues before the jury."

12

¶ 25    The court instructed the jury that the elements of second

degree murder are as follows:

> 1. That [Shockey],
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. knowingly,
>
> 4. caused the death of [the victim].

¶ 26    The court also gave the jury the following special interrogatory,

which the jury answered:

<u>Question Number 1</u>:

**Did Jacob Shockey use, or possess and threaten the use of, a deadly weapon?**

Jacob Shockey used, or possessed and threatened the use of, a deadly weapon only if:

1.      he used, or possessed and threatened the use of, a deadly weapon,

2.      during the commission of the crime or in the immediate flight therefrom.

The prosecution has the burden to prove each numbered condition beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has met this burden, you should mark "Yes" in the appropriate place, and have the foreperson sign the designated line of this Special Interrogatory.

After considering all the evidence, if you decide the prosecution has failed to meet this burden, you should mark "No" in the appropriate place, and have the foreperson sign the designated line of the verdict form.

[___] Yes          [✓] No

_____
FOREPERSON **

13

¶ 27 Additionally, the court instructed the jury to base its decision on the instructions provided by the court, not on any discussion of the law by the parties:

> It is my job to decide what rules of law apply to the case. While the attorneys may comment on some of these rules, you must follow the instructions I give you. Even if you disagree with or do not understand the reasons for some of the rules of law, you must follow them. No single instruction describes all the law which must be applied; the instructions must be considered together as a whole. During the trial, you received all of the evidence that you may properly consider in deciding the case. Your decision must be made by applying the rules of law that I give you to the evidence presented at trial.

¶ 28 After several days of deliberations, the jury returned its verdict, acquitting Shockey of first degree murder and convicting him of second degree murder. The jury answered "No" to the special interrogatory asking whether Shockey possessed, used, or threatened the use of a deadly weapon. The court polled the jury, and all jurors confirmed the verdict.

¶ 29    Before sentencing, Shockey moved to vacate the conviction, asserting that the verdict was both logically and legally inconsistent given the jury's response to the special interrogatory.[2]

¶ 30    After a hearing on the motion, the court found that the jurors could have relied on a "common sense" theory of complicity to convict Shockey, even if he had not directly pulled the trigger, and denied the motion.

### B.    Preservation

¶ 31    The parties dispute preservation.  Relying on *In re Estate of Chavez*, 2022 COA 89M, the People contend that Shockey waived the inconsistent verdict issue because his attorney did not contemporaneously object before the court released the jurors.  We are not persuaded because inconsistent verdicts in civil cases involve different rights and a different burden of proof.  The People do not identify, nor have we found, any record evidence that Shockey's counsel intentionally relinquished this claim.  *See People*

---

[2] He also attached two juror affidavits stating that the jury convicted Shockey based on the prosecutor's discussion of complicity during voir dire.  We do not consider the affidavits in our analysis.  CRE 606(b).

*v. Rediger*, 2018 CO 32, ¶ 40 (Waiver is the "intentional relinquishment of a known right or privilege."). Instead, the record shows that Shockey's counsel objected to the inconsistent verdicts in the motion to vacate the conviction, in the supplemental motion to vacate, and during the post-trial hearing.

¶ 32    Moreover, *Rail v. People*, 2019 CO 99, does not require a different result. In that case, the supreme court rejected a similar waiver argument and followed *Rediger*, which requires "some evidence, beyond mere acquiescence, that the defendant *intentionally* relinquished a *known* right or privilege." *Rail*, ¶ 35 (citation omitted). Accordingly, we conclude the issue is preserved for our review.

## C.    Standard of Review

¶ 33    Whether verdicts are logically or legally inconsistent is a question of law we review de novo. *People v. Brooks*, 2020 COA 25, ¶ 19; *People v. Struckmeyer*, 2020 CO 76, ¶ 3. We have a duty "to reconcile and uphold verdicts if the evidence so permits." *People v. Scearce*, 87 P.3d 228, 232 (Colo. App. 2003). "If the verdicts are consistent in any view of the evidence, the presumption is that the jury took that view." *Id.*

¶ 34    In *Brooks*, the division considered the proper standard of review to apply when deciding whether a special interrogatory response conflicts with the general verdict form.  *Brooks*, ¶¶ 19-20.  Noting that no Colorado court had decided this issue, the division assumed without deciding that the issue should be reviewed de novo because the considerations it implicates are similar to those presented by mutually exclusive verdicts.[3]  To support its conclusion, the division relied on *Kreiser v. People*, 199 Colo. 20, 21-24, 604 P.2d 27, 28-30 (1979), in which the supreme court, in considering a claim that a verdict was ambiguous, did not specifically identify the standard of review, yet seemingly reviewed the issue de novo.  *Id.*

¶ 35    We agree with the reasoning in *Brooks* and *Kreiser* and therefore review de novo whether a verdict is internally inconsistent and thus ambiguous.  *Id.*

---

[3] The court concluded that it did not need to make a hard and fast rule about what the appropriate standard of review was because, on the facts of the case, it would make no difference in the outcome. *People v. Brooks*, 2020 COA 25, ¶ 20.

### D. Applicable Law

¶ 36 "Taken together, the Fifth Amendment Due Process Clause and the Sixth Amendment guarantee of a trial by jury permit conviction only upon a jury verdict finding the defendant guilty of having committed every element of the crime with which he has been charged." *Sanchez v. People*, 2014 CO 29, ¶ 13. Thus, courts are prohibited "from entering a conviction for an offense other than that authorized by a jury's verdict, or directing a verdict for the State, no matter how overwhelming the evidence." *Id.*

¶ 37 To satisfy due process, the prosecution is required to prove all elements of a crime beyond a reasonable doubt. *Montez v. People*, 2012 CO 6, ¶ 21 (first citing U.S. Const. amend. XIV, § 1; and then citing Colo. Const. art. II, § 25). And the trial court must instruct the jury correctly on all matters of law. *See People v. Manier*, 197 P.3d 254, 259 (Colo. App. 2008).

¶ 38 "A verdict in a criminal case should be certain and devoid of ambiguity." *Brooks*, ¶ 11 (quoting *Yeager v. People*, 170 Colo. 405, 410, 462 P.2d 487, 489 (1969)). The verdict must "convey beyond a reasonable doubt the meaning and intention of the jury." *People v. Durre*, 690 P.2d 165, 173 (Colo. 1984) (quoting *Yeager*, 170 Colo. at

410, 462 P.2d at 489). But subject to certain limitations discussed herein, "consistency among verdicts is unnecessary." *People v. Whittiker*, 181 P.3d 264, 278 (Colo. App. 2006) (quoting *People v. Beatty*, 80 P.3d 847, 852 (Colo. App. 2003)).

¶ 39    As relevant here, a person commits second degree murder if, among other things, he knowingly causes the death of a person. § 18-3-103(1)(a), C.R.S. 2023. "A person acts 'knowingly' . . . , with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2023.

¶ 40    Colorado jurisprudence has recognized three distinct categories where a verdict inconsistency may result in an infirm conviction. The first occurs when a conviction contradicts an acquittal — for example, a defendant may not be simultaneously acquitted of a substantive offense and convicted of conspiracy to commit that substantive offense when the evidence supporting both is the same. *Robles v. People*, 160 Colo. 297, 300-01, 417 P.2d 232, 234 (1966).

¶ 41    The second occurs when jury verdicts for two different counts are mutually exclusive — that is, a defendant may not be convicted

of two distinct offenses "when the essential elements of [the] two guilty verdicts logically negate each other." *People v. Delgado*, 2019 CO 82, ¶ 12. For example, a defendant may not be convicted of both robbery and theft from a person based on the same conduct because the robbery conviction requires proof that the defendant unlawfully took an item with force, whereas the theft conviction requires proof that the defendant unlawfully took an item without force. *Id.* at ¶ 46. Mutually exclusive guilty verdicts are not permitted because of the defendant's "right to have each element of a crime proven beyond a reasonable doubt." *Id.* at ¶ 21.

¶ 42 Finally, the third occurs when a jury's response to a special interrogatory negates an element of the substantive offense to which that special interrogatory applies. *Brooks*, ¶¶ 15-18.

¶ 43 Our supreme court first addressed this third category in *Rail*. There, the defendant was charged with sexual assault on a child as a pattern of abuse and sexual assault on a child by one in a position of trust. *Rail*, ¶ 3. The jury convicted the defendant of sexual assault on a child. *Id.* at ¶ 11. It also found, in the pattern special interrogatory, that the prosecution had proved all the incidents described by the victim. *Id.* Nevertheless, in the position

20

of trust special interrogatory, the jury found that the incidents listed on the pattern special interrogatory were "[n]ot [p]roved."  *Id.*

¶ 44     Although the supreme court distinguished a jury's unanimity interrogatory responses nullifying its verdict from cases involving mutually exclusive verdicts, *id.* at ¶¶ 25-26, it never resolved whether a special interrogatory response can create an ambiguity in a verdict.  Instead, the supreme court, analyzing for plain error, concluded that the trial court's entry of the judgment of conviction was obvious error, but that the error was mitigated by each juror's reaffirmation of the verdict during polling.  *Id.* at ¶ 46.  Consequently, the court declined to reverse the defendant's conviction.  *Id.*

¶ 45     In *Brooks*, a division of this court applied the *Rail* analysis and held that a jury's response to a special interrogatory can negate an element of the substantive offense.  *Brooks*, ¶¶ 21-25.  There, the defendant was charged with first degree burglary as a crime of violence, among other counts.  *Id.* at ¶ 4.  The jury convicted the defendant of first degree burglary, but it also found, on the special interrogatory, that the defendant had *not* used, or possessed and threatened the use of, a deadly weapon.  *Id.* at ¶ 8.  The trial court

21

entered a judgment of acquittal for first degree burglary based on this inconsistency, and the People appealed. *Id.* at ¶¶ 9-10. The division concluded that the jury's verdict could not be reconciled with its special interrogatory response and found that the verdict was ambiguous. *Id.* at ¶¶ 24-25.

¶ 46     Turning to the appropriate remedy for this ambiguous verdict, the division noted a key distinction between the remedy for two mutually exclusive guilty verdicts and the remedy for a single internally inconsistent verdict. *Id.* at ¶¶ 27-31. In the former, the division observed that the appropriate remedy is a retrial because the jury "essentially says that the defendant did not commit crime one because he committed crime two, and also that the defendant did not commit crime two because he committed crime one." *Id.* at ¶ 28; *see Delgado*, ¶¶ 42, 45. In the latter, the division noted that, "[u]nlike mutually exclusive verdicts, when an inconsistency within a single verdict negates an element, the remaining elements may nevertheless support a guilty verdict." *Brooks*, ¶ 29.

¶ 47     The jury's response to the special interrogatory negated only the ninth element of first degree burglary: the remaining elements — the elements of the lesser included offense of second degree

22

burglary — remained consistent with the special interrogatory response. *Id.* at ¶ 30. Thus, the division concluded that "[r]ather than acquittal or retrial, the proper remedy for an ambiguous verdict in this circumstance is to enter a conviction to the lesser included offense encompassed by the unchallenged jury findings." *Id.* at ¶ 31. It reversed the trial court's judgment of acquittal on the first degree burglary conviction and remanded with instructions to enter a judgment of conviction for the lesser included offense of second degree burglary.[4] *Id.* at ¶ 41.

¶ 48     *Brooks*, however, did not consider the appropriate remedy in a case like this, where the special interrogatory negates an essential element of the offense and all lesser included offenses. We now turn to that question.

### E. Analysis

¶ 49     The court instructed the jury that, to convict Shockey of second degree murder, it had to find that he knowingly caused the death of the victim. The prosecution's entire theory of the case was

---

[4] The division also concluded that entering a conviction for second degree burglary did not raise due process or double jeopardy concerns. *Brooks*, ¶¶ 32-33.

that Shockey was the shooter and that he caused the victim's death. And the evidence showed that the victim died from gunshot wounds. Thus, by convicting Shockey of second degree murder, the jury found beyond a reasonable doubt that Shockey shot the victim. But by finding that the prosecution did not prove beyond a reasonable doubt that Shockey used, possessed, or threatened to use a deadly weapon, the jury inconsistently concluded that the prosecution had *not* proved that Shockey was the shooter. Thus, the record reveals an inconsistent finding concerning the *identity* of the shooter and *causation*. And the only way to reconcile these inconsistent findings is by applying a complicity theory to the facts, a legal theory the court rejected and for which the jury received no instruction.

¶ 50     To ensure that jurors are fair and impartial, they are not permitted to consider "any information that is not properly received into evidence or included in the court's instructions." *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005). And we must presume

that the jury followed the instructions it was given. *People v. Dominguez-Castor*, 2020 COA 1, ¶ 91.[5]

¶ 51    We conclude that the jury's special interrogatory finding that the prosecution had not proved that Shockey used, possessed, or threatened to use a gun negated the causation and identity elements of second degree murder, and that absent a complicity instruction, these two unanimous findings (that Shockey shot the victim but that the prosecution failed to prove that he used a deadly weapon) contradict each other and render the conviction infirm. *See Brooks*, ¶ 24; *Durre*, 690 P.2d at 173. We hold that, in this circumstance, the proper remedy is vacatur of the conviction because the jury made a factual determination that the prosecution did not prove all of the elements of the offense beyond a reasonable doubt, and to permit a different jury to reconsider that finding would violate Shockley's constitutional right to be free from double jeopardy. 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.10(a),

---

[5] We acknowledge the irony in relying on this presumption when the record reveals the jury did not follow it.

Westlaw (4th ed. database updated Nov. 2022); *see also Sanchez*, ¶ 15.

¶ 52     We are not persuaded otherwise by the People's attempt to distinguish a finding beyond a reasonable doubt from a finding that the prosecution failed to prove its case beyond a reasonable doubt. They argue that the verdict and interrogatory response are not inconsistent because the jury did not find beyond a reasonable doubt that Shockey did not use a deadly weapon. Instead, they assert that the jury actually found the prosecution had not proved beyond a reasonable doubt that Shockey used a deadly weapon. True, but this is a distinction without a difference because a jury's finding beyond a reasonable doubt that the prosecution failed to prove an element beyond a reasonable doubt holds the prosecution to its burden. *See Tibbels v. People*, 2022 CO 1, ¶ 23 ("The Due Process Clause of the United States Constitution 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [they are] charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970))).

¶ 53     Instead, we are persuaded by our supreme court's analysis in

*Sanchez v. People*, 2014 CO 29.  There, the jury found the

defendant *not guilty* of sexual assault on a child.  *Id.* at ¶ 8.  But it

also found, on the pattern of abuse verdict form, that two of the six

touching incidents had been proved.  *Id.*  The trial court then

entered a judgment of conviction for sexual assault on a

child - pattern of abuse.  *Id.*  The supreme court reversed and

concluded that because the jury found the defendant not guilty of

the substantive offense of sexual assault on a child, the trial court

could not enter judgment based on the findings in a sentence

enhancer.  *Id.* at ¶¶ 15-17.  It held that "[e]ntering [a] judgment of

conviction of a crime as to which the jury instructions fail to

produce a verdict of guilty beyond a reasonable doubt amounts to

structural error, mandating reversal."  *Id.* at ¶¶ 14, 19.

¶ 54     Here, as in *Sanchez,* we have an ambiguity created by a

special interrogatory response; however, it is one that negates two

essential elements of the substantive offense — identity and

causation.  Because the jury instructions failed to produce a verdict

of guilt beyond a reasonable doubt on all the elements of second

degree murder, the trial court's judgment of conviction amounts to

structural error mandating reversal. *See id.* at ¶ 15 ("It is enough here that the verdict on the basis of which the trial court entered judgment of conviction . . . simply failed to evidence a unanimous jury determination that the defendant committed all the elements and was guilty of a crime.").

¶ 55     We hold that vacatur is the proper remedy here because, as in *Sanchez,* the jury failed to prove two essential elements of the substantive offense beyond a reasonable doubt, amounting to structural error and the attachment of double jeopardy. *See People v. Porter*, 2015 CO 34, ¶ 9 (The Double Jeopardy Clauses of the United States and Colorado Constitutions prevent "both a second prosecution for the same offense *after acquittal* or conviction and multiple punishments for the same offense.") (emphasis added). Moreover, a retrial would not be the proper remedy for three reasons. First, as noted in *Delgado*, retrial is appropriate for claims of mutually exclusive verdicts. *See Delgado,* ¶ 43 (holding acquittal on both charges was not the proper remedy for inconsistent verdicts because the jury did not actually acquit the defendant). Second, unlike in *Brooks*, there is no lesser included offense that has been factually proved beyond a reasonable doubt that would allow us to

reverse and remand for entry of a different conviction. Finally, the dissent's reasoning for a retrial requires it to consider that the trial court refused to instruct the jury on complicity and conclude that was error, an issue not raised by the parties and, therefore, not properly before us. *See Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n,* 11 P.3d 432, 438 (Colo. 2000) (stating that a court may not "render an advisory opinion on a controversy that is not yet ripe, or to decide a case on speculative, hypothetical, or [a] contingent set of facts") (citation omitted); *People v. Becker,* 2014 COA 36, ¶ 29 ("Addressing the issues would therefore result in an advisory opinion, which risks improperly depriving the parties of their prerogative to litigate the case as they choose."); *People v. Curtis,* 2014 COA 100, ¶ 12 ("[T]he cardinal principle of judicial restraint [is that] if it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Labs. Inc. v. U.S. Drug Enf't Admin.,* 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

¶ 56 Accordingly, we vacate the judgment of conviction. Because the conviction is vacated, we do not address Shockey's remaining contentions.

## III.  Disposition

The judgment is vacated.

JUDGE YUN concurs.

JUDGE RICHMAN concurs in part and dissents in part.

JUDGE RICHMAN, concurring in part and dissenting in part.

¶ 58     I agree with the majority that defendant's conviction for second degree murder cannot stand.  But because I would reverse for a different error than found by the majority, and because that reversible error arose from the trial court's rulings, I disagree with the majority that the reversal precludes retrial of defendant.

¶ 59     The majority's conclusion rests on its view that the jury's answer to the special interrogatory stating that defendant did not use or possess a deadly weapon negates an element of the offense of second degree murder, of which the jury convicted defendant.  I disagree with that premise.

¶ 60     The jury was instructed that to convict defendant of second degree murder, it must find beyond a reasonable doubt the following elements of the offense: that the defendant, in the State of Colorado, knowingly caused the death of the victim.  That instruction does not list use or possession of a deadly weapon as an element of the offense.  The jury was asked to answer the special interrogatory because use of a deadly weapon in the commission of the murder was charged as a sentence enhancer in count 3 of the complaint, not because it was an element of the offense.

31

¶ 61    When the jury convicted defendant of second degree murder, it necessarily found that he caused the death of the victim.[1]  It also found that defendant did not use or possess a deadly weapon.  The majority concludes that the jury's answer to the special interrogatory conflicts with an element of the second degree murder instruction.  The majority explains that conflict by pointing out that, since the uncontradicted evidence showed that the victim died due to a gunshot, and the jury found that defendant did not use or possess a deadly weapon, defendant could not have murdered the victim.  To support this analysis, the majority relies on *People v. Brooks*, 2020 COA 25.

¶ 62    But this case is different from the situation in *Brooks*.  In *Brooks*, as here, the jury answered a special interrogatory stating that the defendant did not use a deadly weapon in the commission of the offense of which he was convicted.  But in *Brooks*, use of a deadly weapon was a listed element of the first degree burglary offense for which Brooks was convicted, and the jury's answer to

---

[1] In a separate special interrogatory, the jury expressly found that defendant "caused serious bodily injury or death" to the victim.

the special interrogatory necessarily negated that element. But in the instant case, as noted, use of a deadly weapon was not an element of the second degree murder charge.[2] In my judgment, the inconsistent jury verdicts in this case should be viewed as logically inconsistent and mutually exclusive, and thus retrial is the proper remedy. *See People v. Delgado*, 2019 CO 82, ¶¶ 28, 45.

¶ 63 Although not the typical case, a defendant can be found guilty of second degree murder without having used a deadly weapon; namely, as a complicitor of one who does wield the deadly weapon. The majority points out that the jury here was not instructed on a complicity theory. I agree. And that is where the trial court's error comes into play.

¶ 64 As defendant argues on appeal, the trial court allowed the prosecution to ask extensive questions during voir dire about finding a defendant guilty based on a complicity theory. The

---

[2] I also disagree with the majority that *Sanchez v. People*, 2014 CO 29, precludes reversing for a new trial in this case. In *Sanchez*, the jury returned a not guilty verdict as to the substantive offense of sexual assault but found that the sentence enhancer was proved. The supreme court thus held that the defendant was not convicted by a unanimous jury. *Id.* at ¶ 15. Here, by contrast, the jury unanimously found defendant guilty of the substantive offense.

majority states that the prosecutor discussed complicitor liability "at length." *Supra* ¶¶ 15-18. The majority opinion details this questioning, and I need not repeat it here. Defense counsel objected to the prosecution's questioning, but the trial court let the prosecutor continue. The prosecutor elicited agreement from several jurors that they would not have a problem convicting on a complicity theory.

¶ 65 Apparently concerned that the prosecutor was not accurately describing complicitor liability, defendant's counsel asked the trial court to read the legal definition of complicity to the jury. The trial court refused to do so. In my view, as more fully explained below, the trial court erred by allowing this jury questioning about complicitor liability.

¶ 66 The trial court then compounded its error by not instructing the jury in the closing instructions on a complicitor theory of liability, as requested by the prosecution.[3] In my view, the trial court erroneously concluded that there was not sufficient evidence

---

[3] I recognize that defendant does not claim error in failing to instruct on complicitor liability, but I discuss that failure because it is a link in the chain of errors that led to the inconsistent verdict.

to warrant the instruction and wrongly concluded it would "completely confuse the issues before the jury."

¶ 67     Finally, the trial court erred by denying defendant's motion to vacate the verdict because it was logically and legally inconsistent. The trial court must have recognized that the jury's verdict was based on a complicitor theory on which it had not been instructed, but it dismissed that error by stating the jury could have relied on a "common sense" theory of complicity.

¶ 68     This cascade of errors substantially influenced the verdict and undermined the reliability of the judgment of conviction, necessitating reversal and a remand for a new trial, as defendant requests.  *See Hagos v. People*, 2012 CO 63, ¶ 12.

## I.     Voir Dire

### A.     Applicable Law and Standard of Review

¶ 69     The purpose of voir dire is to test whether the jurors possess any beliefs that would deny the defendant a fair trial.  *People v. Wilson*, 2013 COA 75, ¶ 12.  The propriety of questions to potential jurors on voir dire is within the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless an abuse of

that discretion is shown. *People v. Collins*, 730 P.2d 293, 300 (Colo. 1986).

¶ 70    Under Crim. P. 24(a)(3), the "court may limit or terminate repetitious, irrelevant, unreasonably lengthy, abusive or otherwise improper examination." For example, a trial court may limit voir dire to prevent an attorney from "instruct[ing] the jury regarding the law or the defendant's theory of the case." *People v. Lybarger*, 790 P.2d 855, 859 (Colo. App. 1989), *rev'd on other grounds*, 807 P.2d 570 (Colo. 1991). This is because "[t]he knowledge or ignorance of prospective jurors concerning questions of law is generally not a proper subject of inquiry for voir dire since it is presumed that the jurors will be adequately informed as to the applicable law by the instructions of the court." *Collins*, 730 P.2d at 301. In *Collins*, the division concluded that the trial court properly limited the scope of voir dire, including placing limitations on the irrelevant hypothetical that defense counsel attempted to use. Generally, it is not an abuse of discretion for the trial court to limit questions on voir dire relating to the law. *Id.*

## B. Discussion

¶ 71    The prosecution's voir dire regarding complicity consisted of improper questions relating to the law and the prosecution's putative theory of defendant's guilt. Moreover, the prosecution's explanation of complicity was incomplete and somewhat misleading. The questions were irrelevant given the fact that the prosecution was not pursuing liability based on complicity at the opening of the trial. And the "lengthy" questioning, as the majority describes it, was in my view unreasonable. The trial court failed to exercise its authority under Crim. P. 24(a)(3) to restrict the questioning. And that error led to the next error, which resulted in harm to defendant.

## II. Failure to Instruct the Jury on Complicity

¶ 72    A defendant can be found liable as a complicitor even if someone else committed the crime, if the defendant aided, abetted, advised, or encouraged him in his criminal act or conduct, with both an awareness of the required circumstances and an intent that the other person proceed with that conduct. *People v. Childress*, 2015 CO 65M, ¶ 37.

37

¶ 73    Although the prosecution did not tender initial jury instructions containing a complicitor theory of liability as to defendant, it obviously began to rethink that position by the time of the voir dire.  During the trial, both the prosecution and the defense offered some evidence that defendant was acting as a complicitor of Mayfield.

¶ 74    Mayfield testified that the victim owed twenty dollars to defendant for "fronted" drugs.  When Mayfield and defendant encountered the victim, defendant said to Mayfield, "[C]ome on, this motherfucker thinks I'm playing with him, go get my money."  Mayfield stated that he thought he and defendant were going into the alley to beat the victim up in order to collect the money.  Mayfield said defendant told him to act as a lookout.  Mayfield denied knowing defendant had a gun that evening.  But according to Mayfield, the encounter resulted in the victim being shot twice in the chest.  Mayfield said that while he could not identify a shooter, he agreed that no person other than defendant could have shot the victim.  Mayfield also testified that he later helped defendant retrieve the gun and defendant asked him to help eliminate the gun residue from defendant's hands.

¶ 75    But according to a police interview admitted at trial, defendant told the officer that it was Mayfield to whom the victim owed money for drugs, and as they were walking toward the alley, Mayfield said "he was going to lay [the victim] down," meaning defendant thought Mayfield was going to shoot the victim.

¶ 76    Taken together, this testimony provided some evidence that defendant and Mayfield were complicit in the murder of the victim. To be sure, the evidence conflicted as to which of them did the actual shooting, and that would be a question for the jury to resolve. Given the low threshold for instructing the jury on complicity, I conclude the trial court erred by rejecting the prosecutor's instruction on a complicity theory.

¶ 77    As the People state in their opening brief, "if the district court had applied the correct standard, an instruction on complicity would have been given in this case." In support of this assertion, the People cite *People v. Whiteaker*, 2022 COA 84 (*cert. granted* Apr. 17, 2023), which applies the familiar "any evidence" threshold to a prosecutorial request for an initial aggressor instruction. *Id.* at ¶ 38. In *Montoya v. People*, 2017 CO 40, ¶ 18, the supreme court signaled that, for a conviction to be based on a theory of complicitor

liability, "there must merely be evidence from which the trier of fact can find that the defendant was legally accountable for the behavior of another actor."

¶ 78    The trial court recognized that there was some evidence to support a complicitor theory, saying that "there may be indeed some information that might support some kind of proposition of complicity theory." Nonetheless, it denied the prosecution's request to instruct on a complicitor theory.

### III.    Denial of Defendant's New Trial Motion

¶ 79    When the jury returned its verdict of guilty as to second degree murder but found defendant did not use or possess a deadly weapon, defendant promptly filed a motion to vacate the verdict on the basis of inconsistency. Defendant contended that the jury must have found him guilty on a complicitor theory, despite no such instructions being given to the jury.[4] The prosecution objected to

---

[4] Defendant submitted juror affidavits asserting that the jurors convicted because they applied a complicitor theory. I agree with the People that such affidavits are not admissible under CRE 606(b) and should not be considered.

the motion, stating that "there is no evidence supporting this assertion."

¶ 80    The trial court denied the motion, but in doing so apparently agreed in part with defendant's argument that the jury applied a complicity theory:

> I think, frankly, that even individuals of common sense, which we hope jurors always are, kind of operate with a theory of complicity in many situations in any event, especially when they see two people who are essentially together acting in a similar way. And, as has been pointed out, three people going into a dark alley and only two of them coming out, clearly the jury could decide that whatever may have happened in that particular alley, Mr. Shockey should be responsible even if he were not the one who directly pulled the trigger, so to speak, on the weapon that was used in this case.

¶ 81    The court rejected the argument that the verdicts were inconsistent because "second degree murder does not necessarily require the use of a deadly weapon."

¶ 82    I, like the majority, disagree with the trial court and conclude there is an inconsistency between the jury's verdict and its answer to the special interrogatory. I don't think the answer negates an element of the offense, but there is no logical explanation for the

41

result other than what the trial court hypothesized, but didn't act on: the jury applied a "common sense" theory of complicity. The problem with the jury doing so is that it was not instructed on a theory of complicity.[6]

¶ 83    And, as defendant argues on appeal, a person may not be convicted on a theory that is not submitted to the jury. *Chiarella v. United States*, 445 U.S. 222, 236 (1980) (we cannot affirm a criminal conviction on the basis of a theory not presented to the jury); *see also Dunn v. United States*, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.").

¶ 84    It is apparent that the jury's verdict, based on the proceedings taken as a whole, convicted defendant on the basis of a complicitor theory. Given the events at trial, that result is not surprising. But defendant's conviction cannot be upheld on a complicitor theory because it was not submitted to the jury.

---

[6] I agree with the majority's comment in footnote 4 that the jury apparently did not follow the court's instructions; instead it developed a complicitor theory of its own making.

¶ 85    Accordingly, I agree with the majority that the jury verdict and interrogatory response were faulty, but in my view they were logically inconsistent and mutually exclusive.  Thus, while I agree with the majority that defendant's conviction cannot stand, I would reverse the conviction and grant defendant a new trial as he requests as an alternative remedy.